The **STATE of Ohio**, Appellee,

v.

**ROTEN**, Appellant.

[Cite as *State v. Roten*, 149 Ohio App.3d 182, 2002-Ohio-4488.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA99–09–102 and CA99–09–107.

Decided Sept. 3, 2002.

Timothy A. Oliver, Warren County Prosecuting Attorney, and Mark E. Piepmeier, Assistant Prosecuting Attorney, for appellee.

Thomas G. Eagle, for appellant.

VALEN, Judge.

{¶ 1}  Defendant-appellant, Larry Quentin Roten, appeals his conviction in the Warren County Common Pleas Court on various counts of intimidation, retaliation, and using sham legal process.  The judgment is affirmed for the reasons outlined below.

{¶ 2}  Charges were filed against appellant in connection with documents he presented to the Warren County Prosecuting Attorney Tim Oliver, the Warren County Clerk of Courts James Spaeth, and Paul Woodbury, the grand jury foreperson who served on a grand jury that heard earlier charges against appellant and signed the original indictments against him.  Appellant, proceeding pro se, was found guilty following a jury trial.  Appellant appeals his conviction and raises two assignments of error.

## Assignment of Error No. 1

{¶ 3}  "The trial court erred in the exclusion of the appellant's evidence."

{¶ 4}  Appellant argues that the trial court would not permit him to introduce evidence or cross-examine witnesses about his motivation for sending the documents, his state of mind, the common-law movement, and the witness's interpretation of the law, even though the state "opened the door" with such evidence or testimony.

{¶ 5}  "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of syllabus.

{¶ 6}  A trial court has broad discretion in determining whether to admit or exclude evidence, and unless the court abused its discretion and materially prejudiced a party, the decision will stand. *State v. Withers* (1975), 44 Ohio St.2d 53, 55, 73 O.O.2d 280, 337 N.E.2d 780. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *State v. Lowe* (1994), 69 Ohio St.3d 527, 532, 634 N.E.2d 616 .

{¶ 7}  After a thorough review of the record, we find that the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in deciding the admissibility and exclusion of evidence or testimony. The jury received ample evidence from appellant on the issues he sought to bring before it. We also find that the trial court's rulings did not materially prejudice appellant. Appellant's first assignment of error is overruled.

## Assignment of Error No. 2

{¶ 8}  "The trial court erred in compelling the appellant to answer questions on cross-examination from the prosecuting attorney[.]"

{¶ 9}  Appellant argues that the trial court incorrectly informed appellant that he could take the stand and testify and refuse to answer any questions but ordered appellant to answer questions on cross-examination once appellant took the stand.

{¶ 10}  A review of the transcript in this matter shows that appellant, appearing pro se, wanted to introduce certain documents to the jury in his case-in-chief. The trial court informed appellant that he did not have to take the stand and testify, but if he did so, he would be subject to cross-examination. The trial court further told appellant that he "would have the right to refuse to answer any questions that you feel might incriminate you, you have the right to stop any question. But, once you start, once you get on and once you take the oath and put yourself on the stand, you are going to be subject to questioning by the state."

{¶ 11}   After appellant presented his documents with testimony, he stated that he did not want to take the stand.   The trial court ordered appellant to take the stand, and the prosecutor cross-examined appellant.   At one point, appellant refused to answer a question, and the trial court told appellant that his previous testimony may be stricken if he did not answer the questions.   Appellant indicated, "I'm claiming the Fifth Amendment on that."   The transcript revealed that the state proceeded to ask a different question.

{¶ 12}   A criminal defendant who voluntarily takes the stand in his own defense voluntarily subjects himself to proper cross-examination.   *State v. Jacocks* (1990), 64 Ohio App.3d 713, 717–718, 582 N.E.2d 1079.   A defendant who thus chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives.   Id., citing *Harrison v. United States* (1968), 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047.

{¶ 13}   By testifying on his own behalf, appellant waived his privilege against compulsory self-incrimination with respect to his direct testimony.   Appellant argues that he might have decided not to testify at all had the trial court's instructions been clear.

{¶ 14}   A review of the record shows that the trial court's instructions were confusing, at best.   However, we find no prejudice to appellant.   In fact, appellant was able to use his testimony on cross-examination to explain his motivation for forwarding certain documents to public officials or public servants.

{¶ 15}   After reviewing the entire record of the proceedings, we cannot say that the outcome of the trial would have been different, but for appellant's decision to testify and his testimony on cross-examination.   We find that there was no reasonable possibility that the error contributed to appellant's conviction.   *State v. Brown* (1982), 7 Ohio App.3d 113, 7 OBR 145, 454 N.E.2d 596.

{¶ 16}   Under his second assignment of error, appellant presents four additional issues for review that would be more appropriate as a separate assignment of error.   Appellant's second and third issues assert that his convictions for intimidation and using sham legal process were based upon an erroneous interpretation of law, insufficient evidence, and were against the manifest weight of the evidence.

{¶ 17}   In resolving the sufficiency of the evidence argument, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of syllabus.

{¶ 18}   In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 19}   An appellate court's decision to reverse a judgment and grant a new trial on grounds that a verdict is against the manifest weight of the evidence must be unanimous, and a new trial should be granted only "in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 386, 387, 678 N.E.2d 541.   We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

{¶ 20}   We have carefully reviewed the necessary elements of the offense of intimidation and the testimony presented by the state in support of those charges.  We find that the jury could have found beyond a reasonable doubt that appellant knowingly and by force, by unlawful threat of harm to any person or property or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, attempted to influence, intimidate, or hinder a public servant in the discharge of the person's duty.  R.C. 2921.03(A).

{¶ 21}   As to the manifest weight analysis, the state presented testimony from Tim Oliver and James Spaeth that they received documents[1] that purported to be judgments, or indictments, or instruments requiring payment of large sums if they did not release appellant's father or failed to respond to appellant's documents.  Appellant, on the other hand, presented testimony that he was simply attempting to regain custody of his father after his father was removed by the state from appellant's care.  Appellant also testified that he believed that the Ohio Revised Code was not law and that the documents he was sending to the public servants were valid under a legal system he recognizes.

---

1.  The documents were "Presentment of Payment Under UCC3–504" sent to prosecutor Tim Oliver; document titled, "State of the Forum Common Law Venue; UCC–4 Private Security Agreement 'True Bill' Non–Standard, Non–Federal, Non–Negotiable" sent to Oliver; document captioned "Indictment" sent to clerk James Spaeth; document titled "Notice of Removal" and "Subpoena Duces Tecum" sent to Spaeth; and the "Public Notice of Voluntary Contract Complaint for Declaratory Judgment" sent to Spaeth.

{¶ 22}   Upon review of the record before us, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions for intimidation must be reversed and a new trial ordered.

{¶ 23}   R.C. 2921.52(B) states: "No person shall, knowing the sham legal process to be sham legal process, do any of the following: (1) Knowingly issue, display, deliver, distribute, or otherwise use sham legal process." "Sham legal process" is defined by R.C. 2921.52(A)(4) as "an instrument that meets all of the following conditions: (a) It is not lawfully issued; (b) It purports to do any of the following: (i) To be a summons, subpoena, judgment, or order of a court, a law enforcement officer, or a legislative, executive, or administrative body; (ii) To assert jurisdiction over or determine the legal or equitable status, rights, duties, powers, or privileges of any person or property; (iii) To require or authorize the search, seizure, indictment, arrest, trial, or sentencing of any person or property; (c) It is designed to make another person believe that it is lawfully issued."

{¶ 24}   We find that the jury could have found beyond a reasonable doubt that appellant committed the offense of using sham legal process.  Further, we find, upon a review of the record provided by the evidence from both the state's witnesses, Oliver, Spaeth, and Paul Woodbury,[2] and evidence presented by appellant, that the jury did not lose its way and create such a manifest miscarriage of justice that the convictions for using sham legal process must be reversed and a new trial ordered.

{¶ 25}   Finally, we reject appellant's argument that his erroneous interpretation of the law negates the "knowingly," "materially false," "fraudulent," "reckless" or "purported" requirements of either the intimidation or the sham legal process statutes.  Evidence was presented that appellant was aware of the existence of the fact that he was issuing documents not recognized as legal by Ohio law, but which were titled in a manner or using such language to purport to be indictments or judgments or unilateral contracts that affected the public servants in their duties or required them to pay large sums of money to appellant if the public servant acted or failed to act as appellant wanted.  Accordingly, appellant's second and third issues concerning the intimidation and sham legal process counts are without merit.

{¶ 26}   Appellant's fourth and fifth issues for review contest the constitutionality of the statutes proscribing intimidation, using sham legal process, and

---

2.  Documents admitted for sham legal process counts were "Presentment of Payment Under UCC3–504" sent to Tim Oliver;  document titled, "State of the Forum Common Law Venue; UCC–4 Private Security Agreement 'True Bill' Non–Standard, Non–Federal, Non–Negotiable" sent to Oliver;  documents captioned "Indictment" sent to clerk James Spaeth and Paul Woodbury.

retaliation. Appellant first asserts that R.C. 2921.03 (intimidation), R.C. 2921.05 (retaliation), and R.C. 2921.52 (using sham legal process) are unconstitutionally vague and overbroad. In addition, appellant argues in his final issue that the three statutes impermissibly infringe on his constitutional right of freedom of expression. We will address these arguments together as their issues often overlap.

{¶ 27} As an initial matter, it must be noted that statutes enacted in Ohio are presumed to be constitutional, and this presumption of constitutionality remains unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional. *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342.

{¶ 28} In order to survive a void-for-vagueness challenge, the statute must be written so that a person of common intelligence is able to determine what conduct is prohibited, and second, the statute must provide sufficient standards to prevent arbitrary or discriminatory enforcement. Id. Third, but related, a vague statute that abuts upon sensitive areas of First Amendment freedoms operates to inhibit the exercise of those freedoms. *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 381, 618 N.E.2d 138, citing *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 29} In determining whether a statute fairly informs a person of ordinary intelligence and understanding what is prohibited, courts should consider the challenged phrase in the context it is used in the law and not as it stands alone. *State v. Reeder* (1985), 18 Ohio St.3d 25, 27, 18 OBR 21, 479 N.E.2d 280.

{¶ 30} A statute is overbroad if within its reach it prohibits constitutionally protected First Amendment conduct. *Akron* at 387, 618 N.E.2d 138. A statute is substantially overbroad if it is "susceptible of regular application to protected expression." Id.

{¶ 31} To determine whether a statute or ordinance violates the First Amendment, we must establish whether it regulates the content of speech, or simply the time, place and manner. *Dayton v. Van Hoose* (Dec. 8, 2000), Montgomery App. No. 18053, 2000 WL 1803867. Restrictions on the manner of speech require an intermediate level of scrutiny. The restriction will be upheld if it is "justified without reference to the content of the regulated speech, is narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication." Id.

{¶ 32} We have previously listed the statutory language for intimidation and using sham legal process. The retaliation statute states, "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who

was involved in a civil or criminal action or proceeding because the public servant * * * discharged the duties of the public servant * * *." R.C. 2921.05.

{¶ 33} The statutes dealing with intimidation, using sham legal process, and retaliation are not vague. The statutes are sufficiently definite that a person of common intelligence would be able to determine what conduct is prohibited under each offense. Further, we find that the statutes provide sufficient standards to prevent arbitrary or discriminatory enforcement.

{¶ 34} Appellant argues that each of the statutes operates to hinder First Amendment freedoms and impermissibly prohibits protected First Amendment conduct. We find that the intimidation, sham process, and retaliation statutes are not overbroad and do not violate First Amendment rights. The statutes do not impinge or impermissibly inhibit appellant's exercise of his First Amendment rights, including, but not limited to, his right to voice displeasure with governmental conduct and policies and to request redress of grievances. The statutes proscribe the use of documents not lawfully issued that purport to have legal authority over others. Likewise, the statutes proscribe the use of documents not lawfully issued to intimidate and retaliate against public servants. The three statutes at issue are not vague, overbroad, or violative of appellant's First Amendment rights. Therefore, appellant's constitutional arguments are not well taken, and the second assignment of error is overruled.

Judgment affirmed.

WALSH, P.J., and POWELL, J., concur.