OPINION
{¶ 1} Defendant-appellant, Lance G. Clark, appeals his conviction in the Warren County Court of Common Pleas of one count of felonious assault in violation of R.C. 2903.11(A)(1). We affirm the decision of the trial court.
 {¶ 2} The second-degree felony charge was filed after it was alleged that appellant, while an inmate at the Warren Correctional Institution, assaulted George Hamilton, a fellow inmate, in a recreation shed located in the prison yard. *Page 2 
 {¶ 3} July 3, 2004 was "yard day" at Warren Correctional, and approximately 700 to 800 inmates were engaged in various outdoor sporting events and activities in the prison yard. According to testimony at trial, Hamilton and another inmate were drinking homemade wine, also known as "hooch," that day. After drinking multiple bottles of hooch inside their cells, the inmate told Hamilton that there were more bottles outside in the prison yard, and he invited Hamilton to drink with him there. Once outside, the inmate told Hamilton that he had to speak with someone, and instructed Hamilton to wait for him near a recreation shed located in the yard.
 {¶ 4} The recreation shed housed all of the equipment used by the inmates in the prison yard. One inmate was assigned to work in the shed, taking inmate ID cards in exchange for pieces of recreation equipment. At trial, several witnesses testified that only the inmate assigned to work in the shed was permitted inside. Inmate Eric Tepe was assigned to work in the shed that day. Hamilton testified that as he approached the doorway of the shed, he saw Tepe inside, but also saw two other individuals whom he could not identify. According to Hamilton, he could not recall anything that happened after walking up to the doorway of the shed.
 {¶ 5} Conflicting testimony was presented at trial as to how the altercation between appellant and Hamilton occurred. The state presented testimony from inmate David Shafeek, who testified that he witnessed the altercation. Shafeek testified that he was standing near the doorway to the shed and saw appellant punch Hamilton in the face. Shafeek did not recall seeing Hamilton swing back at appellant. According to Shafeek, appellant punched Hamilton in the face "more than once," and Hamilton fell inside the shed with his head landing on the concrete outside the doorway. Shafeek testified that appellant stood over Hamilton and punched him in the face approximately five to six more times. He then kicked Hamilton in the face four or five times, and "stomped him in the head" four or five *Page 3 
times. Shafeek also testified that he observed other inmates pull Hamilton inside the shed after the altercation was over. According to Shafeek, it was dark inside the shed and he could not identify the other inmates.
 {¶ 6} The defense presented a different version of events. Although appellant admitted to striking Hamilton, he testified that he did so in self-defense. According to appellant, he was waiting to play a softball game and was talking with Tepe and two other inmates near the shed when Hamilton approached him and appeared intoxicated. Appellant testified that Hamilton was trying to pick a fight with him. According to appellant, he left the area several times to avoid Hamilton, but eventually returned and sat down on a chair inside the shed in order to change his clothes and shoes for the softball game.
 {¶ 7} According to appellant, as he was getting his shoes out of his bag, Hamilton came at him at "full speed" and stated "mother fucker you want to try me?" Appellant testified that Hamilton attempted to punch him, but grazed the top of appellant's head with his hand as appellant stood up. Appellant further testified that he was concerned that Hamilton had a weapon, and as Hamilton "square[d] up" to hit him, appellant struck him twice in the face, and kicked him twice in the face as he fell to the floor. At trial, other inmates who were present at the scene, including Tepe, testified similarly on behalf of the defense that Hamilton was the aggressor, and that appellant acted in self-defense.
 {¶ 8} The parties stipulated at trial that Hamilton suffered head and facial injuries that constituted serious physical harm. They also stipulated that Hamilton was transported to a nearby hospital by way of helicopter life flight, and that upon arrival at the hospital, he was unconscious and placed in intensive care.
 {¶ 9} Appellant was interviewed after the altercation by Trooper Jeremy Landis of the Ohio State Highway Patrol. Prior to questioning, appellant was provided his Miranda warnings and signed a waiver of his rights. Appellant told Trooper Landis that he was the *Page 4 
one who struck Hamilton, and that the other inmates in the shed had nothing to do with it. A corrections officer, who was with appellant after the altercation, testified that appellant asked him whether Hamilton had lived or died and stated, "I did it, cut the other three [inmates] out."
 {¶ 10} On February 5-7, 2007, appellant was tried by a jury and convicted of the felonious assault charge. On March 26, 2007, the trial court sentenced appellant to six years in prison. Appellant advances five assignments of error on appeal. For ease of discussion, appellant's assignments of error will be addressed out of order.
 {¶ 11} Assignment of Error No. 4:
 {¶ 12} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} In his fourth assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. In considering a manifest weight challenge, an appellate court must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hubbard, Warren App. No. CA2007-01-008, 2008-Ohio-2630, ¶ 8, citing State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Bryant, Warren App. No. CA2007-02-024, 2008-Ohio-3078, ¶ 30.
 {¶ 14} In performing its review, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the appropriate weight to be given the evidence. Hubbard at ¶ 14, citing State v. DeHass (1967),10 Ohio St.2d 230, 231. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. State v. Benge,75 Ohio St.3d 136, 143, 1996-Ohio-227. "The discretionary power to grant a new trial should be exercised only in the exceptional case in *Page 5 
which the evidence weighs heavily against the conviction." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides, in part, "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." In proving the mental state of knowingly, it is not necessary to demonstrate that the defendant intended to cause physical injuries. State v.Hawkins, Montgomery App. No. 21691, 2007-Ohio-2979, ¶ 31, citingState v. Anderson, Franklin App. No. 06AP-174, 2006-Ohio-6152, ¶ 43. "Instead `knowledge' involves the question of whether an individual is aware that her conduct will probably cause a certain result or will probably be of a certain nature." Hawkins at ¶ 31.
 {¶ 16} Upon review of the evidence, we conclude that the jury could have reasonably convicted appellant of felonious assault. First, there was evidence that appellant acted knowingly. According to appellant, when he struck Hamilton he used "strong defensive punches," and he "put all [his] body into every punch." He further testified: "[w]hen I hit him, — when I punch, I throw my punch — I put my body into my right. When I threw my kick, snapped my kick. And, when he came at me, I snapped him, and I hit him real square to his face." In addition, a corrections officer testified that appellant asked him whether Hamilton had lived or died. In light of this testimony, a jury could have reasonably determined that appellant was aware that his conduct would probably cause serious physical harm to Hamilton. See Hawkins at ¶ 31.
 {¶ 17} Second, in addition to the parties' stipulation, there was substantial evidence presented at trial that Hamilton suffered serious physical harm. One corrections officer testified that when he arrived at the scene, Hamilton was gasping for air and bleeding "pretty bad, very, very badly, like very badly." At trial, Hamilton testified that his vision was impaired in one eye, and that he had memory loss and severe headaches. He also testified that he *Page 6 
could no longer taste or smell.
 {¶ 18} Appellant argues that the jury lost its way in convicting him because the evidence regarding Hamilton's injuries did not support Shafeek's account of how the events transpired. He argues that the physical evidence contradicted Shafeek's testimony that appellant repeatedly punched and kicked Hamilton after he had fallen to the ground. According to appellant, there was only a small amount of blood on the concrete outside the shed where Hamilton's head landed, and there was no "splattering" of blood inside the shed.
 {¶ 19} Although the state's case rested primarily on Shafeek's eye-witness testimony, the jury was within its province to credit his testimony and the state's other witnesses, and discredit the testimony of the defense witnesses. State v. Howard, Ross App. No. 07CA2948,2007-Ohio-6331, ¶ 16. "The jury is `best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony.'" Id., quoting Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. In convicting appellant, the jury, as the trier of fact, determined that Shafeek's account of the events was more persuasive than that of appellant and the other defense witnesses. It cannot be said that the jury lost its way because the state presented substantial evidence regarding the seriousness of Hamilton's injuries to support Shafeek's account of the altercation.
 {¶ 20} In addition, although appellant asserted that he struck Hamilton in self-defense, the jury could have reasonably determined that the evidence demonstrated otherwise. In Ohio, self-defense is an affirmative defense, and a defendant attempting to invoke it must prove: "(1) that the defendant was not at fault in creating the situation giving rise to the affray, (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that the defendant did not violate any duty to retreat or avoid the danger *Page 7 
* * *." State v. Voss, Warren App. No. CA2006-11-132, 2008-Ohio-3889, ¶ 54, quoting State v. Gillespie, 172 Ohio App.3d 304, 308,2007-Ohio-3439, ¶ 12, 13. The defendant must prove each of these elements by a preponderance of the evidence. Howard at ¶ 12.
 {¶ 21} Since appellant admitted to striking Hamilton, the jury only needed to determine whether appellant's actions were justified on the basis of self-defense. See Howard at ¶ 17. While appellant and the defense witnesses testified that Hamilton was the aggressor, Shafeek testified that he did not recall seeing Hamilton strike appellant during the altercation, and that Hamilton was "standing there" while being punched. Based on this testimony, the jury could have reasonably found that appellant was the aggressor, and that his actions created the violent situation. In addition, given appellant's testimony regarding the intensity of his punches and kicks to Hamilton, and the corrections officer's testimony that appellant asked him whether Hamilton had died, the jury could have reasonably determined that appellant used excessive force. The level of force used in the defense of one's self must be "necessary and reasonable under the facts and circumstances of the case and in view of the danger apprehended." Howard at ¶ 13, quotingMartin v. Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 93.
 {¶ 22} Upon a thorough review of the record, and based upon the foregoing, we find that appellant's conviction for felonious assault was not against the manifest weight of the evidence. Appellant's fourth assignment of error is therefore overruled.
 {¶ 23} Assignment of Error No. 1:
 {¶ 24} "THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS UNDER BOTH THE FEDERAL AND STATE CONSTITUTIONS WHEN IT DENIED APPELLANT THE OPPORTUNITY TO CONDUCT [A] HEARING REGARDING APPELLANT'S MOTION TO DISCHARGE."
 {¶ 25} In his first assignment of error, appellant argues that the trial court violated his *Page 8 
due process rights by denying him the ability to present evidence and conduct a hearing regarding his motion to discharge the indictment. We disagree with appellant's contention.
 {¶ 26} The record reveals that at the time of the altercation, appellant was serving a six-year sentence at Warren Correctional. After the altercation, appellant was segregated from the general prison population for approximately 11 months, and was subsequently transferred to the Ohio State Penitentiary in Youngstown, Ohio to serve the remainder of his sentence. The record reflects that appellant's sentence was to be completed on September 16, 2006.
 {¶ 27} On August 21, 2006, appellant was indicted on one count of felonious assault stemming from the altercation with Hamilton. He was arraigned on August 30, 2006 and appointed counsel. At that time, appellant's trial was scheduled for November 6-8, 2006. Appellant was released from the state penitentiary, but did not post bail and was held at Warren Correctional pending trial on the felonious assault charge.
 {¶ 28} On October 31, 2006, appellant filed a pro se motion to discharge his indictment. The basis for appellant's motion was that his constitutional and statutory speedy trial rights were violated because he was not advised of his right, while incarcerated at the state penitentiary, to request a speedy trial on the felonious assault charge within one hundred eighty days pursuant to R.C. 2941.401.
 {¶ 29} A criminal defendant's right to a speedy trial is guaranteed by the United States and Ohio Constitutions. State v. Baker,78 Ohio St.3d 108, 110, 1997-Ohio-229. When a person is charged with a felony, they must be brought to trial within 270 days after the date of their arrest. R.C. 2945.71(C)(2); State v. Murphy, Clinton App. No. CA2006-02-005,2007-Ohio-2068, ¶ 12. This is known as the "general" speedy trial statute. State v. Beverly, Ross App. No. 04CA2809, 2005-Ohio-4954, ¶ 8. When the accused is held in jail on the pending charge in lieu of bail, each day they are held is counted as three days. R.C. 2945.71(E). *Page 9 
 {¶ 30} However, if the accused is already incarcerated and the pending charge is for a crime separate from that for which he is currently imprisoned, the "specific" speedy trial limitations of R.C. 2941.401 may apply. See Murphy at ¶ 12; Beverly at ¶ 8. R.C. 2941.401 provides, in pertinent part:
 {¶ 31} "When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, * * *.
 {¶ 32} "The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof."
 {¶ 33} At the hearing, appellant's trial counsel argued his pro se motion to the court.[1] However, appellant's argument at the hearing focused not on the warden's alleged failure to notify him of his rights under R.C. 2941.401, but instead on whether appellant had been "arrested" on the date of the altercation, therefore invoking the 270-day speedy trial limitation of R.C. 2945.71(C)(2). Appellant argued that he should have been brought to trial within 270 *Page 10 
days of July 3, 2004, and requested the trial court to dismiss the August 21, 2006 indictment on that basis.
 {¶ 34} In support of his argument, appellant subpoenaed Wanza Jackson, the warden of Warren Correctional, and Trooper Landis, who interviewed appellant on the date of the altercation. Appellant contended that their testimony would establish that he was arrested by Trooper Landis on the date of the altercation, and that his segregation from the general prison population at Warren Correctional for 11 months following the altercation constituted further indicia of his arrest. The state objected, arguing that testimony as to the date of appellant's alleged arrest was irrelevant to the stated reason for appellant's motion to discharge, i.e., the failure of the warden of the state penitentiary to notify him of his rights under R.C. 2941.401.[2] The trial court sustained the state's objection. Appellant was permitted to proffer the anticipated testimony of those witnesses.
 {¶ 35} It is well-established that "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court."State v. Roten, 149 Ohio App.3d 182, 2002-Ohio-4488, ¶ 5, quotingState v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court will not disturb a trial court's ruling as to the exclusion of evidence absent an abuse of discretion. Roten at ¶ 6. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. Id.
 {¶ 36} We find that the trial court did not abuse its discretion in sustaining the state's objection to the testimony of appellant's witnesses, as their testimony was not relevant to appellant's argument that the warden of the state penitentiary failed to inform him of his statutory rights under R.C. 2941.401. Moreover, even if we assume that the trial court erred *Page 11 
in prohibiting the testimony of appellant's witnesses, the exclusion of that evidence was, at most, harmless error, as Ohio law does not support appellant's contentions.
 {¶ 37} Although appellant argues generally that he was denied his right to a speedy trial under R.C. 2941.401, we conclude that the 180-day time limitation of that statute did not apply to appellant since, during the pendency of the proceedings, appellant was released from his six-year "term of imprisonment" at the state penitentiary and was being held in lieu of bail at Warren Correctional solely on the pending felonious assault charge. Beverly, 2005-Ohio-4954 at ¶ 8. As appellant was no longer an incarcerated individual, the specific speedy trial statute did not apply. Id. Based on appellant's change of status, only the provisions of R.C. 2945.71, the general speedy trial statute, were applicable. Id.
 {¶ 38} In applying R.C. 2945.71, we conclude that appellant's speedy trial rights did not accrue until the date of his indictment on the felonious assault charge, i.e., August 21, 2006. See State v.Grinnell, 112 Ohio App.3d 124, 131-132. In Grinnell, the Tenth Appellate District determined that for purposes of R.C. 2945.71, the date of "arrest" of an incarcerated individual is the date of indictment on the current charge. Id. See, also, State v. Salyers, Marion App. No. 9-05-04, 2005-Ohio-5037, ¶ 10. The fact that appellant was segregated from the general prison population while incarcerated at Warren Correctional did not constitute an arrest. The court of appeals inGrinnell rejected a similar argument, reasoning that segregated confinement is a form of discipline, and "is not an `arrest' for speedy trial purposes * * *." Id. at 131.
 {¶ 39} Based on the foregoing, we conclude that appellant was not prejudiced by the exclusion of Warden Jackson's and Trooper Landis' testimony at the hearing on his motion to discharge the indictment, and his due process rights were not violated. Appellant's original trial date of November 6, 2006 was within 270 days of the date of his August 21, 2006 *Page 12 
indictment on the felonious assault charge.[3] Accordingly, appellant's first assignment of error is overruled.
 {¶ 40} Assignment of Error No. 2:
 {¶ 41} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 42} In his second assignment of error, appellant argues that he was denied the effective assistance of counsel because his trial counsel did not file a motion to dismiss for preindictment delay, and did not object at trial to evidence introduced by the state regarding appellant's affiliation with a prison gang. We disagree.
 {¶ 43} In determining whether counsel's performance constitutes ineffective assistance, an appellate court must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. Strickland v. Washington (1984),466 U.S. 668, 687-688, 694, 104 S.Ct. 2052. In demonstrating prejudice, an appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. Id. at 689.
 {¶ 44} First, appellant faults his attorney for failing to file a motion to dismiss for preindictment delay. Appellant argues that a motion to dismiss was "absolutely required" to be filed because there was a two-year delay between the date of the altercation and when appellant was indicted on the felonious assault charge. Appellant argues that he was prejudiced as a result of the delay, claiming that several of the defense witnesses' memories *Page 13 
of the altercation had faded, and that evidence from the scene, specifically appellant's shoes and clothing, were no longer available for use at trial to contradict Shafeek's account of the events.
 {¶ 45} The Ohio Supreme Court has concluded that the delay between the commission of an offense and an indictment, can, under certain circumstances, constitute a violation of due process of law guaranteed by the federal and state constitutions. See State v. Luck (1984),15 Ohio St.3d 150, paragraph two of the syllabus. "To warrant a dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice." State v. Walls, 96 Ohio St.3d 437,2002-Ohio-5059, ¶ 51. Once the defendant meets that burden, the state must produce evidence of a "justifiable reason for the delay." Id.
 {¶ 46} "Any claim of prejudice, such as the death of a key witness, lost evidence, or faded memories, must be balanced against the other evidence in order to determine whether actual prejudice will be suffered by the defendant at trial. * * * If the court determines that the defendant will suffer actual prejudice at trial as a result of the delay in commencing prosecution, the court must then determine whether the reason for that delay is unjustifiable." State v. Collins (1997),118 Ohio App.3d 73, 76-77. (Citations omitted.) An unjustifiable delay may occur where it is undertaken intentionally to gain some tactical advantage over the defendant, or when the state is negligent in failing to actively investigate the case. Id. at 77. However, prejudice may not be presumed from a lengthy delay. Id.
 {¶ 47} Upon review, we find that appellant failed to demonstrate that his trial counsel's failure to file a motion to dismiss for preindictment delay constituted ineffective assistance of counsel. Even if we assume, arguendo, that trial counsel's representation fell below an objective standard of reasonableness as a result of his failure to file a motion to dismiss, appellant has not established a reasonable probability that the result of the proceeding would *Page 14 
have been different had the motion been filed. See Strickland at 694. Appellant has not shown that he was prejudiced as a result of his trial counsel's alleged ineffectiveness. Id.
 {¶ 48} We note that appellant's prosecution was commenced well-within the applicable six-year statute of limitations period. See R.C. 2901.13(A)(1)(a). The statute of limitations provides the "primary guarantee against bringing overly stale criminal charges." State v.Copeland, Cuyahoga App. No. 89455, 2008-Ohio-234, ¶ 10, citingUnited States v. Lovasco (1977), 431 U.S. 783, 789, 97 S.Ct. 2044. See also Collins at 77 (concluding that any period of delay in commencing prosecution that falls within the six-year limitations period is not prejudicial in the absence of specific, contrary evidence).
 {¶ 49} Although appellant argues that his shoes and clothing were "no longer available for use at trial" due to the state's delay in prosecuting him, there is no evidence in the record to suggest that these items were unavailable or lost. In addition, although appellant argues that he was prejudiced by defense witnesses' faded memories, he has not shown how the witnesses' recollection of the altercation would have changed the outcome at trial. The possibility that memories will dim, witnesses will become inaccessible, or evidence will be lost is not enough in itself to establish actual prejudice to justify the dismissal of an indictment. United States v. Marion (1971), 404 U.S. 307, 325-326,92 S.Ct. 455.
 {¶ 50} Appellant also argues that his trial counsel's failure to object to the introduction of expert testimony regarding appellant's affiliation with a prison gang, and counsel's failure to object to these references in the state's closing argument, constituted ineffective assistance of counsel. We disagree with appellant's contention.
 {¶ 51} The state's theory was that the altercation was orchestrated by members of a prison gang known as the Aryan Brotherhood, in retaliation against Hamilton for providing information to authorities on another Aryan Brotherhood member. In support of this theory, the state presented expert testimony from a prison gang investigator who described the *Page 15 
hierarchal structure of the Aryan Brotherhood, general characteristics of its members, and its concept of loyalty. The investigator testified that appellant was classified as an Aryan Brotherhood member in the department of corrections' gang profile database. He further testified that several inmates who testified on behalf of the defense were also Aryan Brotherhood members.
 {¶ 52} Contrary to appellant's argument, our review of the record reveals that his trial counsel objected to the gang investigator's testimony, arguing that it was offered as evidence of appellant's character and was therefore improper. The trial court overruled the objection. As previously discussed, the admissibility of relevant evidence rests within the sound discretion of the trial court.Roten, 149 Ohio App.3d 182, 2002-Ohio-4488 at ¶ 5. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. Id.
 {¶ 53} It is well-established that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. See Evid. R. 404(B);State v. Curry (1975), 43 Ohio St.2d 66, 68-69. However, this evidence may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid. R. 404(B);State v. Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 11. The Ohio Supreme Court has determined that evidence of a defendant's gang affiliation is admissible to show motive. State v. Bethel,110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 170. This is particularly the case where "the interrelationship between people is a central issue." Id., quotingUnited States v. Gibbs (C.A.6, 1999), 182 F.3d 408, 430.
 {¶ 54} We conclude that the trial court did not abuse its discretion in allowing the gang investigator's testimony regarding appellant's affiliation with the Aryan Brotherhood, and appellant did not suffer ineffective assistance of counsel as a result. Under the Ohio *Page 16 
Supreme Court's rationale in Bethel, appellant's trial counsel had no valid basis to object to this evidence. Id. at ¶ 169. The testimony was offered to demonstrate appellant's motive, not his character. In addition, the relationship between appellant and the other defense witnesses was a central case issue. The trial court properly determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to appellant. See Evid. R. 403(A).
 {¶ 55} With respect to trial counsel's failure to object to statements made in the state's closing argument regarding appellant's affiliation with the Aryan Brotherhood, the Ohio Supreme Court has determined that a defendant does not suffer ineffective assistance when his counsel does not object to remarks made during closing argument. State v. Myers,97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 154. The court in Myers noted:
 {¶ 56} "[A] reasonable attorney may decide not to interrupt his opponent's closing argument. * * * Objections can `disrupt the flow of a trial' and `are considered technical and bothersome by the factfinder.' * * * A decision not to interrupt during closing arguments reflects an `objective standard of reasonable representation.'" Id. (Citations omitted.)
 {¶ 57} This court has also concluded that it is within counsel's "realm of tactical decision-making to choose to avoid interrupting closing arguments to voice an objection." State v. Brown, Warren App. No. CA2002-03-026, 2002-Ohio-5455, ¶ 22. Accordingly, we find that trial counsel's failure to object during the state's closing argument to statements regarding appellant's affiliation with the Aryan Brotherhood did not constitute ineffective assistance of counsel.
 {¶ 58} Based on the foregoing, appellant's second assignment of error is overruled.
 {¶ 59} Assignment of Error No. 3:
 {¶ 60} "APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT." *Page 17 
 {¶ 61} In his third assignment of error, appellant argues that the state committed prosecutorial misconduct by interlacing its gang-retaliation theory throughout its closing argument. Although he does not point to specific statements made by the state, appellant argues generally that the state's references to appellant's affiliation with the Aryan Brotherhood were improper and highly prejudicial because they were not supported by the evidence. We disagree.
 {¶ 62} In order to determine whether a prosecutor's remarks constitute misconduct, a court must consider the following: "(1) whether the remarks were improper; and, if so, (2) whether the remarks prejudicially affected a defendant's substantial rights. * * * To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred." State v. Jones, Butler App. No. CA2006-11-298, 2008-Ohio-865, ¶ 21. (Citations omitted.) The closing argument "must be reviewed in its entirety to determine if the prosecutor's remarks were prejudicial." Id., citing State v. Byrd
(1987), 32 Ohio St.3d 79, 82.
 {¶ 63} As previously discussed, appellant's trial counsel did not object to the gang affiliation references made by the state in its closing argument. In failing to object, appellant waived all but plain error regarding these comments. See Crim. R. 52(B). Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. The burden is on the defendant to show a violation of his substantial rights. State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.State v. Landrum (1990), 53 Ohio St.3d 107, 111.
 {¶ 64} Upon review of the state's closing argument, we find no error on the basis of prosecutorial misconduct. The references made by the state in its closing argument were *Page 18 
predicated on the evidence properly admitted at trial. In addition to the gang investigation expert, the state elicited testimony at trial from other witnesses to demonstrate appellant's motive. Hamilton testified that approximately two or three days prior to the altercation, he saw appellant standing with a group of Aryan Brotherhood members next to the shed. Hamilton testified that one member swung a baseball bat in the air and stated, "this is what you're getting ready to get in a few days." According to Hamilton, appellant started laughing, looked at Hamilton, and "nodded his head."
 {¶ 65} In addition, on cross-examination of the defense witnesses, the state questioned their affiliation with the Aryan Brotherhood. Many of the witnesses admitted to being members and agreed that they felt a duty of loyalty towards other members of the gang. Appellant also admitted to being an Aryan Brotherhood member at the time of the altercation. Additional evidence was introduced that the inmate who drank with Hamilton earlier that day and led him to the shed, and those that were allegedly inside the shed with appellant at the time of the altercation, were also members of the Aryan Brotherhood.
 {¶ 66} Although the state made reference to the credibility of the defense witnesses' testimony based upon their involvement with the Aryan Brotherhood, the evidence in the record supported the state's contention. "It is well-established that `the prosecutor is permitted to make a fair comment on the credibility of witnesses based upon their testimony in open court." Brown, Warren App. No. CA2002-03-026, 2002-Ohio-5455 at ¶ 22, quoting State v. Mundy, 99 Ohio App.3d 275, 304. Accordingly, the state's comments were not improper and do not constitute plain error. Appellant's third assignment of error is overruled.
 {¶ 67} Assignment of Error No. 5:
 {¶ 68} "APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE ERRORS BY THE TRIAL COURT, TRIAL COUNSEL, AND THE PROSECUTOR."
 {¶ 69} In his final assignment of error, appellant argues that he was denied a fair trial *Page 19 
due to the cumulative errors of the trial court, his trial counsel, and the prosecutor.
 {¶ 70} Under the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner, 74 Ohio St.3d 49, 64,1995-Ohio-168, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus.
 {¶ 71} Since we do not find any instances of error in this case, we overrule appellant's fifth assignment of error.
 {¶ 72} Judgment affirmed.
YOUNG and POWELL, JJ., concur
[1] We note that, although not addressed by the trial court or the parties at the hearing, or raised by the parties on appeal, appellant's filing of a pro se motion while represented by counsel presents a possible hybrid representation issue. "A criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." State v.Martin, 103 Ohio St.3d 385, 2004-Ohio-5471, paragraph one of the syllabus. In Martin, the Ohio Supreme Court noted that hybrid representation must be avoided because it poses difficult ethical issues for counsel when there is a conflict between counsel and the defendant as to how the case should proceed. Id. at ¶ 33. Although the issue presents important questions, it was not raised by the parties and we will not address its merits in this appeal. See App. R. 12(A)(1)(b).
[2] Our review of the record also reveals that, in addition to Warden Jackson and Trooper Landis, appellant also subpoenaed Mark Houk, the warden of the Ohio State Penitentiary, to appear at the hearing. Although it appears from the record that service of the subpoena was perfected, it does not appear that Warden Houk attended the hearing or that appellant intended to elicit his testimony.
[3] After the denial of his motion to dismiss, appellant's trial was rescheduled for February 5, 2007. Our review of the record reveals that the speedy trial provisions of R.C. 2945.71(C) were temporarily tolled based upon numerous motions filed by appellant. See R.C. 2945.72(E);State v. Murphy, Clinton App. No. CA2006-02-005, 2007-Ohio-2068, ¶ 16. *Page 1