[Cite as *State v. Mills*, 2019-Ohio-774.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28954 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PHIL D. MILLS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2016-08-2784 |

DECISION AND JOURNAL ENTRY

Dated: March 6, 2019

HENSAL, Judge.

**{¶1}** Phil Mills appeals his convictions from the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** In July 2010, the victim in this case returned home to let his dog out after being released from school early. He entered his home through the basement-level garage and paused to sort through his mail. He then heard footsteps above him, so he looked up the basement stairs and saw someone's feet in the doorway. That individual, whom the victim described as a black male wearing a mask, then cracked the basement door open, pointed a gun at the victim, and said "Ay, ay, ay[.]" The victim immediately ran out of his home through the garage and ran to his neighbor's house. Meanwhile, the intruder fled the house on foot. A mailman saw the intruder fleeing and attempting to secure something in his waistband. The mailman could not see the intruder's face, but described him as being about 5'7" tall.

{¶3} Shortly thereafter, police arrived at the scene. During their search of the nearby area, police discovered a loaded gun, a ski mask, pepper spray, and a pry bar. Police tagged those items as evidence and later submitted them for DNA testing. Police also located three possible suspects and presented them to the victim. The victim, however, was unable to positively identify any of the suspects as the intruder because the intruder's face had been covered with a mask.

{¶4} Upon re-entering his home, the victim noticed that two back windows had been broken, his bedroom safe had been opened, the rings contained therein had been taken, and a bullet hole was in his bedroom wall. The police retrieved the bullet from the wall, which a firearms expert later determined was discharged from the gun the police found.

{¶5} The case went cold until the police received a CODIS hit in 2011, indicating a possible DNA match with Mr. Mills. Despite receiving the hit in 2011, the police did not obtain a DNA sample from Mr. Mills until 2016. The results of the DNA testing indicated that Mr. Mills's DNA was on the handle of the gun, as well as the ski mask.

{¶6} A grand jury indicted Mr. Mills for one count of aggravated burglary in violation of Revised Code Section 2911.11(A)(2) with an accompanying firearm specification, one count of aggravated robbery in violation of Section 2911.01(A)(1) with an accompanying firearm specification, and one count of having weapons while under disability in violation of Section 2923.13(A)(3). Mr. Mills pleaded not guilty and the matter proceeded to a jury trial.

{¶7} At trial, the State presented testimony from several witnesses, including the victim, as well as the mailman who saw the intruder running from the victim's home. A lieutenant with the Akron Police Department also testified, stating that Mr. Mills is 5'7" tall, which was consistent with the mailman's description of the intruder. During its examination of

the victim and the lieutenant, the State introduced pictures of the crime scene, as well as aerial images that showed the surrounding area.

{¶8} The State also presented testimony from a DNA expert, who indicated that the DNA samples obtained from the handle of the gun and the ski mask matched Mr. Mills, and that Mr. Mills's DNA was the "major contributor" to those items. She also testified that those items contained additional DNA, but that it was not sufficient for comparison. She further testified that the swabs taken from the pry bar and the trigger of the gun contained no DNA profile. Additionally, as previously noted, a firearms expert testified that the bullet the police retrieved from the victim's bedroom wall was fired from the gun that the police found.

{¶9} The defense stipulated that Mr. Mills had previously been convicted of a felony-drug offense for purposes of having weapons while under disability. The defense then presented testimony from one witness. That witness, who is serving a life sentence for aggravated murder, testified that he committed the crime.

{¶10} The jury ultimately found Mr. Mills guilty. Mr. Mills now appeals, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} In his first assignment of error, Mr. Mills argues that his convictions are against the manifest weight of the evidence. When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences,
> consider the credibility of witnesses and determine whether, in resolving conflicts
> in the evidence, the trier of fact clearly lost its way and created such a manifest

> miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶12} In support of his assignment of error, Mr. Mills argues that the State failed to present evidence that confirmed he was in the victim's home, or that described the mask he was allegedly wearing. He also argues that, despite the State's DNA expert testifying that DNA other than Mr. Mills's was present on the handle of the gun, as well as the mask, the State did not test any other DNA. Regarding the gun, Mr. Mills argues that the jury clearly lost its way because there was no DNA on the trigger of the gun despite the fact that the State's firearms expert testified that the bullet retrieved from the victim's bedroom wall was discharged from that gun. He also argues that the fact that the gun was fully loaded when the police found it indicates that the jury lost its way because it is "simply impossible for the jury to have believed that a fully loaded revolver with Mr. Mills' DNA on the grip but not the trigger discharged a round in [the victim's] dwelling." Relatedly, he argues that there was no testimony indicating that the intruder removed a spent shell casing from the gun and reloaded it, or that the police located the spent casing. Mr. Mills further challenges the fact that the gun cartridges were never tested for DNA.

{¶13} While Mr. Mills's argument addresses apparent inconsistencies and the lack of certain evidence in the record, we cannot say that the jury clearly lost its way by finding Mr. Mills guilty. As previously noted, the State presented evidence indicating that Mr. Mills's DNA was on the mask and the gun, as well as testimony indicating that the intruder was 5'7" tall, which – according to the unrebutted testimony of a lieutenant with the Akron Police Department – is Mr. Mills's height. Further, while Mr. Mills argues that it was "simply impossible for the

jury to have believed that a fully loaded revolver with Mr. Mills' DNA on the grip but not the trigger discharged a round in [the victim's] dwelling[,]" this Court has no way of knowing whether the jury reached that conclusion. *See State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29 ("In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness."). Importantly, such a conclusion was not necessary for purposes of finding Mr. Mills guilty of the charged offenses. Stated differently, the jury could have determined that the bullet found in the victim's bedroom wall must not have come from the gun the police found, yet still determined that – given the DNA evidence on the handle of the gun and the victim's testimony that the intruder pointed a gun at him – Mr. Mills committed aggravated burglary and aggravated robbery with the accompanying firearm specifications, as well as having a weapon while under disability.

**{¶14}** Further, we cannot say that the lack of DNA evidence on the trigger of the gun, or the State's alleged failure to test other DNA, indicates that the jury lost its way. The State's DNA expert specifically testified that, although additional DNA was present on the mask and gun, it was not sufficient for comparison. In fact, she testified, there was no way of comparing whether any of the additional DNA on the mask and gun even came from the same person.

**{¶15}** Lastly, to the extent that Mr. Mills points to evidence that the State could have presented (e.g., DNA evidence relative to the gun cartridges), it is this Court's duty to review the evidence actually presented for purposes of determining whether a conviction is against the manifest weight of the evidence. *See State v. Parker*, 9th Dist. Wayne No. 07CA0068, 2008-Ohio-4775, ¶ 1 (rejecting the appellant's manifest-weight argument and noting that this Court cannot speculate as to what certain evidence might have shown).

{¶16} Mr. Mills has failed to establish that his convictions are against the manifest weight of the evidence. Accordingly, his first assignment of error is overruled.

ASSIGNMENT OF ERROR II

APPELLANT WAS DENIED A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶17} In his second assignment of error, Mr. Mills argues that he received ineffective assistance of counsel. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, the defendant must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. Notably, if a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong. *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶18} Mr. Mills argues that he received ineffective assistance of counsel for several reasons, including that his trial counsel failed to: raise any substantive issues at the pretrial level that could have entitled him to relief; raise any issues with respect to the delayed prosecution and/or pretrial delay; raise any suppressible issues that may have existed because of the delayed prosecution and/or pre-indictment delay; request a jury view; and mention during opening statements that the jury would hear testimony from a defense witness who would admit to committing the crime. He also argues that his counsel should have hired a DNA expert, and

should have cross-examined the State's DNA expert regarding the lack of forensic testing on the gun cartridges. He further argues that his counsel's cross-examination of the State's firearms expert was uninformed. He concludes that, when considered in their totality, these errors deprived him of a fair trial.

{¶19} While Mr. Mills states that his counsel's alleged errors deprived him of a fair trial, he fails to explain how, but for the alleged errors, the result of the trial would have been different. For example, he asserts that his trial counsel failed to raise any issue regarding the delayed prosecution and/or pre-indictment delay, but has not articulated how this alleged error prejudiced him. *See State v. Clark*, 12th Dist. Warren No. CA2007-03-037, 2008-Ohio-5208, ¶ 47 (holding that the defendant failed to establish ineffective assistance because he did not establish a reasonable probability that the result of the proceeding would have been different had his counsel filed a motion to dismiss based upon a pre-indictment delay). The same is true for his assertions that his counsel should have elicited certain testimony on cross-examination, hired expert witnesses, requested a jury view, and mentioned a defense witness during opening statements. A claim for ineffective assistance requires a showing of prejudice, which Mr. Mills has not done. At most, Mr. Mills has raised issues of debatable trial strategies, which do not by themselves constitute ineffective assistance. *State v. Arias*, 9th Dist. Lorain No. 04CA008428, 2004-Ohio-4443, ¶ 35 ("[A] debatable trial strategy does not by itself constitute ineffective assistance of counsel."); *State v. Spaulding*, 9th Dist. Summit No. 28526, 2018-Ohio-3663, ¶ 62, quoting *State v. Rafferty*, 9th Dist. Summit No. 23217, 2007-Ohio-3997, ¶ 15 ("The extent and scope of cross-examination clearly fall within the ambit of trial strategy * * *."); *State v. Coombs*, 9th Dist. Lorain No. 03CA008262, 2004-Ohio-441, ¶ 26 ("[T]he decision whether to call an expert witness is simply a matter of trial strategy.); *State v. Gaston*, 6th Dist. Lucas No.

L-06-1183, 2008-Ohio-1856, ¶ 34 (failing to request a jury view does not constitute ineffective assistance and is arguably unnecessary when the jury is shown pictures of the crime scene); *State v. Addison*, 10th Dist. Franklin No. 03AP-1102, 2004-Ohio-5154, ¶ 13 ("[The decision to give a short opening statement is a tactical decision."). Because Mr. Mills has failed to demonstrate that he suffered prejudice as a result of his counsel's actions, he has not established a claim for ineffective assistance of counsel. Accordingly, his second assignment of error is overruled.

III.

{¶20} Mr. Mills's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

MICHAEL J. CONNICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.