JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal, appellant, Elsebeth Baumgartner ("Baumgartner"), appeals her convictions following no contest pleas. Baumgartner assigns eight errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Baumgartner's convictions and remand consistent with this opinion. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Baumgartner in two separate cases. On August 15, 2005, in Case No. CR-470184, the grand jury indicted Baumgartner on eleven counts of intimidation, two counts of retaliation, one count of possessing criminal tools, and four counts of falsification.
 {¶ 4} The above indictments stemmed from Baumgartner's conduct against retired Judge Richard Markus ("Judge Markus"). Judge Markus presided as a retired visiting judge over civil cases in Erie and Ottawa counties involving Baumgartner. In those proceedings, Judge Markus found Baumgartner to be a vexatious litigator and found her liable to opposing parties.
 {¶ 5} At the conclusion of the civil cases, Judge Markus complained to law enforcement officials about Baumgartner's conduct during the pendency of the civil matter. Judge Markus specifically complained that Baumgartner, in an effort to intimidate him, repeatedly sent him e-mails accusing him and other public officials of wrongdoing. The indictments also charged Baumgartner with allegedly sending e-mails *Page 4 
containing materially false information to Judge Markus's three adult children, in an effort to intimidate Judge Markus.
 {¶ 6} On March 23, 2006, in Case No. CR-478555, the grand jury returned a second multi-count indictment against Baumgartner. This indictment(s) charged Baumgartner with one count of falsification, ten counts of intimidation, two counts of retaliation, and one count of possessing criminal tools.
 {¶ 7} The second set of indictments stemmed from Baumgartner's alleged conduct against Bryan Dubois, her co-defendant in the first case. The indictment charged Baumgartner with retaliating against Dubois and his wife for their alleged role as government witnesses in Baumgartners's first case.
 {¶ 8} The indictment alleged that Baumgartner posted a modified version of a rap song by national recording artist Eminem on the internet. The indictment alleged that in the modified rap song, Baumgartner intimidated the Duboises by referencing domestic violence in the Duboises's household in the same breath as children services.
 {¶ 9} On November 15, 2006, pursuant to a plea agreement with the State, Baumgartner pleaded no contest to ten counts of intimidation and two counts of retaliation in Case No. CR-470184. Pursuant to the plea agreement, the State dismissed the remaining charges. The trial court found Baumgartner guilty of seven counts of intimidation and two counts of retaliation in Case No. CR-470184. *Page 5 
 {¶ 10} On that same date, pursuant to another plea agreement with the State, Baumgartner pleaded no contest to four counts of intimidation and two counts of retaliation in Case No. CR-478555. Pursuant to the plea agreement, the State dismissed the remaining charges. The trial court found Baumgartner guilty of three counts of intimidation and two counts of retaliation.
 {¶ 11} On December 21, 2006, in Case No. CR-470184, the trial court sentenced Baumgartner to concurrent prison terms of four years on each count. In Case No. CR-478555, the trial court also sentenced Baumgartner to concurrent prison terms of four years on each count. The trial court ordered the sentences in the two cases to be served consecutively for a total of eight years in prison.
 Insufficient Proffer {¶ 12} In the first assigned error, Baumgartner argues her convictions must be reversed because the State's proffers were insufficient to establish the offenses. We disagree.
 {¶ 13} The record indicates that the instant convictions were entered pursuant to no contest pleas.
 {¶ 14} Crim. R. 11(B)(2) states in pertinent part as follows:
 "The plea of no contest is not an admission of defendant's guilt, but is an admission of truth of facts alleged in the indictment ***."
 {¶ 15} Where a defendant charged with a crime enters a plea of no contest to the complaint, indictment, or information, sufficiency of the evidence is not an issue *Page 6 
for either the trial court or an appellate court.[2] Rather, the issue is whether the facts alleged in the complaint or the indictment state a crime. If the answer to the question is in the affirmative, both trial and appellate inquiry cease.[3]
 {¶ 16} Further, we have previously stated that a plea of no contest made in compliance with Crim. R. 11, in which a defendant admits the truth of the facts alleged in the indictment, waives any error about the sufficiency of the evidence the State might produce to support the charges.[4] The effect of the "no contest" plea is to admit the truth of all the factual allegations in the indictment and to relieve the prosecutor of the burden of proving the defendant guilty beyond a reasonable doubt.[5]
 {¶ 17} Consequently, Baumgartner's "no contest" pleas admitted the facts alleged in the indictment and rendered moot any objection she might have had to the sufficiency of the State's proffers.[6]
Accordingly, we overrule the first assigned error.
 Venue *Page 7 {¶ 18} In the second assigned error, Baumgartner argues her convictions must be reversed because venue was improper for indictments. We disagree.
 {¶ 19} The proper venue of a case is governed by R.C. 2901.12(A), which provides in pertinent part as follows:
 "*** a criminal case *** shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed."
 {¶ 20} It is well settled that venue is a fact to be proven at trial.[7] Since Baumgartner's pleas of no contest waived her right to a trial, thereby obviating the State's burden of proof as to the elements of the charged crimes, her venue claim was waived as well. Thus, when a defendant pleads no contest to an indictment, it is an admission of the proper venue.[8]
 {¶ 21} Moreover, the record indicates that Judge Markus, the alleged victim in Case No. CR-470184, received e-mails from Baumgartner at his home in Cuyahoga County, Ohio. Since Judge Markus received the e-mails in Cuyahoga County Ohio, the State established venue in Case No. CR-470184 in Cuyahoga County. *Page 8 
 {¶ 22} The record also indicates that the charges in Case No. CR-478555 stemmed from Baumgarter's web posting of a parody to a rap song in Erie County, Ohio. The indictment alleged that the web posting was designed to intimidate and to retaliate against Dubois, who was a State's witness in the case involving Judge Markus. Since Dubois was a State's witness in the case involving Judge Markus, Baumgartner's alleged conduct against Dubois impacted the first case.
 {¶ 23} R.C. 2901.12(H) states in pertinent part as follows:
 "When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all such offenses in any jurisdiction in which one such offense or any element thereof occurred.***"
 {¶ 24} We conclude that Baumgartner's alleged actions against Judge Markus and Dubois were part of the same course of criminal conduct, therefore, venue was also established for Case No. CR-478555 in Cuyahoga County Ohio. Accordingly, we overrule the second assigned error.
 Knowingly, Intelligently and Voluntarily {¶ 25} In the third assigned error, Baumgartner argues her no contest pleas in both cases were not knowingly, intelligently, and voluntarily made. We disagree.
 {¶ 26} Within this assigned error, Baumgartner argues that Counts 4 and 5 of Case No. CR-478555 fail to include the element that she used "a materially false or fraudulent writing" in an attempt to influence a witness. We are not persuaded. *Page 9 
 {¶ 27} Counts 4 and 5 of Case No. CR-478555 alleged that Baumgartner violated R.C. 2921.03, which provides in pertinent part as follows:
 "(A) No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant ***, party official, or witness in the discharge of the person's duty."
 {¶ 28} A review of the record indicates that Counts 4 and 5 of the indictment do not include the phrase "materially false or fraudulent writing." However, that is not fatal. The record indicates that the State proffered that Baumgartner attempted to intimidate DuBois "by force or by unlawful threat of harm," specifically through threats contained in altered rap lyrics posted on the internet. The State also indicated that the Duboises, believing the threat to be real, fled Ohio for a period of time.
 {¶ 29} Further, the record indicates that all the discussion relating to Counts 4 and 5 involved whether the Duboises viewed the altered rap lyrics as a threat of harm, not whether the content of the lyric was false or materially false. The record indicates the following discussion concerning the rap lyric:
 "Mr. Gasper: It would take a lot to say that was a threat out of that poem.
 The Court: That's exactly what it was.
 Mr. Peterson: You think so? *Page 10 
 The Court: Absolutely, positively, exactly.
 Mr. Peterson: To who? To who, Judge?
 The Court: It was to Bryan Dubois. And, not only was it to Bryan Dubois, but it was talking about his wife and it talked about his kids. *** It was exactly a threat to him. To tell him that she was going to resort to violence if necessary."[9]
 {¶ 30} The above excerpt reveals that the thrust of the indictment, under R.C. 2921.03, specifically "by force or by unlawful threat of harm," was supported by the discussion on the record. Consequently, we find this contention to be without merit.
 {¶ 31} Within this assigned error, Baumgartner argues that her pleas were not knowingly, intelligently, and voluntarily made because Count 9 of Case No. CR-478555 indicates the date of the offense as January 29, 2006, but the State proffered January 30, 2006, as the date of the offense. We are not persuaded.
 {¶ 32} Specificity as to the time and date of an offense is not required in an indictment.[10] Under R.C. 2941.03(E), "an indictment or information is sufficient if it can be understood therefrom:* * * (E) That the offense was committed at some time prior to the time of filing of the indictment"* * *. "An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State's only *Page 11 
responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged."[11]
 {¶ 33} A review of the record indicates that the bill of particulars correctly identified the date of the offense as January 30, 2006. Despite the indictments alleging the incorrect date, it did not prejudice Baumgartner, because the indictment and bill of particulars alleged sufficient facts to apprise Baumgartner of the charges against her. Consequently, we find this contention without merit.
 {¶ 34} Within this assigned error, Baumgartner argues that her pleas were not knowingly, intelligently, and voluntarily made because the trial court incorrectly stated that she was pleading no contest to twenty-one felonies instead of eighteen. Thus, she was not aware of the maximum penalty involved. We are not persuaded.
 {¶ 35} In the instant case, it is undisputed that the trial court incorrectly stated the number of felonies. However, Baumgartner was not prejudiced. In order to challenge the validity of a plea, a defendant must show a prejudicial effect.[12] The test for prejudice is whether the plea would have otherwise been made.[13]
 {¶ 36} Here, despite the misstatement, the trial court did advise Baumgartner that each felony was a third degree felony, punishable from one-to-five years in *Page 12 
prison. Baumgartner indicated that she understood.[14] Baumgartner subsequently entered no contest pleas and the trial court found her guilty of a total of fifteen third degree felonies. Consequently, Baumgartner has failed to show how she was prejudiced by the misstatement. Accordingly, we overrule the third assigned error.
 Equal Protection {¶ 37} In the fourth assigned error, Baumgartner argues her conviction on Counts 4 and 5 of Case No. CR-478555 violates the Equal Protection Clause of the U.S. Constitution. We disagree.
 {¶ 38} Baumgartner argues that she should not have been charged with felony intimidation, pursuant to R.C. 2921.04(B), in Counts 4 and 5 of Case No. CR-478555. In the third assigned error, we concluded that Baumgartner was charged, pleaded no contest and was found guilty of felony intimidation, pursuant to R.C. 2921.03, in Count 4 and 5 of Case No. CR-478555.
 {¶ 39} Here, the record reflects that Baumgartner was not convicted of any counts under R.C. 2921.04(B). Consequently, this assertion is moot. Accordingly, we overrule the fourth assigned error.
 Vague and Overbroad Statutes {¶ 40} In the fifth assigned error, Baumgartner argues the intimidation and retaliation statutes are vague and overbroad. We disagree. *Page 13 
 {¶ 41} Initially, we note that a statute enjoys strong presumption of constitutionality.[15] Statutes enacted in Ohio are presumed to be constitutional.[16] This presumption of constitutionality remains unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional.[17]
 {¶ 42} In order to survive a void-for-vagueness challenge, the statute must be written so that a person of common intelligence is able to determine what conduct is prohibited, and secondly, the statute must provide sufficient standards to prevent arbitrary or discriminatory enforcement.[18] Third, but related, a vague statute that abuts upon sensitive areas of First Amendment freedoms operates to inhibit the exercise of those freedoms.[19]
 {¶ 43} In determining whether a statute fairly informs a person of ordinary intelligence and understanding what is prohibited, courts should consider the challenged phrase in the context it is used in the law, and not as it stands alone.[20] A statute is overbroad if within its reach it prohibits constitutionally protected *Page 14 First Amendment conduct.[21] A statute is substantially overbroad if it is "susceptible of regular application to protected expression."[22]
 {¶ 44} Baumgartner argues that the intimidation and retaliation statutes operate to hinder First Amendment freedoms and impermissibly prohibits protected First Amendment conduct. We are not persuaded.
 {¶ 45} We have previously listed the statutory language for intimidation. The retaliation statute states as follows:
 "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant *** discharged the duties of the public servant ***."[23]
 {¶ 46} The statutes dealing with intimidation and retaliation are not vague, but are sufficiently definite, so that a person of common intelligence would be able to determine what conduct is prohibited under each offense. We also find that the statutes provide sufficient standards to prevent arbitrary or discriminatory enforcement.
 {¶ 47} In addition, the statutes do not impinge or impermissibly inhibit Baumgartner's exercise of her First Amendment rights, including, but not limited to, *Page 15 
her right to voice displeasure with governmental conduct and policies, and to request redress of grievances.[24]
 {¶ 48} In the instant case, the trial court issued an opinion, which states in pertinent part as follows:
 "*** This Court carefully reviewed the conduct of Ms. Baumgartner, where she instituted a practice of filing civil allegations against Honorable Judge Markus. These smarmy complaints were never accompanied with a request for service on Judge Markus. Instead of seeking service on Judge Markus, Ms. Baumgartner would either contact Judge Markus personally or make a copy of her complaint, to be delivered to him, for the sole purpose of intimidating him. The timing, method and purpose of giving Judge Markus a copy of these documents on the eve of defendant's scheduled court dates clearly and without reasonable doubt were completed in such a manner for the sole purpose to intimidate Judge Markus and to stifle justice in this manner. This Court further acknowledges the email sent to Bryan Dubois, an original co-defendant, where Ms. Baumgartner indicated an interest in Judge Markus' children. *** This was an attempt to intimidate Judge Markus. Such language contained in this email has a clear intent to intimidate Judge Markus when referencing his own children."
 {¶ 49} We conclude that the two statutes at issue are not vague, overbroad, or violative of Baumgartner's First Amendment rights. In the instant case, the trial court found that it was the timing and method and purpose of the speech, which satisfied the elements of intimidation and retaliation. As such, Baumgartner's *Page 16 
constitutional challenges are not well-taken. Accordingly, we overrule the fifth assigned error.
 First Amendment {¶ 50} In the sixth assigned error, Baumgartner argues that the altered rap lyrics are artistic expressions, and thus protected by theFirst Amendment. We disagree.
 {¶ 51} It has been recognized that threats that intimidate or cause fear or apprehension by the recipient are unprotected by theFirst Amendment.[25] As previously discussed, the trial court found the altered rap lyrics to be a threat of physical violence directed at Bryan and Mandy Dubois. In addition, the trial court found that the altered lyrics referenced Dubois's wife by name and his children.
 {¶ 52} Nonetheless, Baumgartner maintains that the altered rap lyrics did not constitute a true threat. However, the critical question is whether the victim subjectively believed at the time of the offense that the offender would cause serious physical harm.[26] Here, as previously discussed the Duboises fled the State of Ohio for a period of time after Baumgartner posted the altered rap song on the internet. *Page 17 
 {¶ 53} We conclude, given the effect of the internet posting, that the altered lyrics constituted a true threat and, as such, was not protected by the First Amendment. Accordingly, we overrule the sixth assigned error.
 Content-Based Speech Regulation {¶ 54} In the seventh assigned error, Baumgartner argues that R.C. 2921.03(A) is unconstitutional because it is a content-based regulation of speech, which violates the First Amendment. We disagree.
 {¶ 55} Content-based regulations are presumptively invalid.[27]
However, certain areas of speech, such as obscenity, defamation, and fighting words, can consistently with the First Amendment, be regulated because of their constitutionally proscribable content.[28] Thus, even the prohibition against content discrimination is not absolute. It applies differently in the context of proscribable speech than in the area of fully protected speech.[29]
 {¶ 56} The United States Supreme Court identified three categories of content discrimination that may be regulated: (1) "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech is proscribable,"[30] (2) when a content-defined subclass of proscribable speech *Page 18 
"happens to be associated with particular `secondary effects' of the speech, so that the regulation is `justified without reference to the content of the *** speech,'"[31] and (3) when "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot."[32]
 {¶ 57} In the instant case, R.C. 2921.03(A) regulates the secondary effects of speech. As previously discussed, the trial court found Baumgartner's timing, method, and purpose of speech troubling. The trial court found Baumgartner's purpose was to intimidate Judge Markus and interfere with the judicial process.
 {¶ 58} We conclude R.C. 2921.03(A) is not a content-based regulation of speech
 {¶ 59} by virtue of its regulation of writings that attempt to intimidate, influence, or hinder a public servant, party official, or witness. Accordingly, we overrule the seventh assigned error.
 Public Policy {¶ 60} In the eighth assigned error, Baumgartner argues that public policy dictates that she enjoys an absolute immunity from criminal prosecution for making false allegations within a civil lawsuit. We disagree. *Page 19 
 {¶ 61} As previously discussed, the timing, method and purpose of the allegedly false allegations were designed to intimidate Judge Markus in carrying out his judicial duties. As such, Baumgartner's conduct constituted intimidation in violation R.C. 2921.03. Accordingly, we overrule the eighth assigned error.
 Case No. CR-470184 / Counts 3 and 11 {¶ 62} On February 4, 2008, we remanded the instant case to the trial court because there was no journal entry sentencing Baumgartner on Counts 4, 5, and 9 of Case No. CR-470184 and Counts 5, 12, and 13 of Case No. CR-478555.
 {¶ 63} A review of the record indicates that the trial court's subsequent journal entry, dated February 28, 2008, contains clerical errors. The journal entry incorrectly states that the trial court sentenced Baumgartner to four-year concurrent prison terms and fined $250 on Counts 3 and 11 of Case No. CR-470184. However, the transcript clearly states, and the State of Ohio concedes, that the trial court found Baumgartner not guilty of Counts 3 and 11 of Case No. CR-470184.
 {¶ 64} These errors do not affect the instant appeal; however, we vacate the sentences for the additional counts in Case No. CR-470184. We also order the trial court to correct the journal entry in Case No. CR-470184 to reference the deletion of sentences in Counts 3 and 11.
Judgment affirmed and remanded.
It is ordered that appellee recover of appellant its costs herein taxed. *Page 20 
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for correction of journal entry and execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and MARY J. BOYLE, J., CONCUR.
 APPENDIX *Page 21 Assignments of Error "I. Appellants conviction on all 15 counts must be reversed becausethe State's proffers were insufficient to establish the offense."
 "II. Venue is improper for all counts in both indictments, requiringreversal of appellant's convictions."
 "III. Defendant-Appellant's no contest pleas in both cases were notknowingly, intelligently and voluntarily made and the indictment in CaseNo. 06-CR-478555 is defective in violation of the Due Process Clause ofthe Fourteenth Amendment to the United States Constitution and Art. I,Sec. 16 of the Ohio Constitution."
 "A. Mrs. Baumgartner's no contest pleas to Counts 4 and 5 of Case No. 478555 were involuntary because the elements of R.C. 2921.03 are not stated in the indictment. Also, Count 9 of Indictment No. 478555 does not match the date the State proffered for that count."
 "B. The trial court did not ensure that Mrs. Baumgartner understood the nature of the charges or the maximum penalty for the crimes charged."
 "IV. Appellant's convictions on Counts 4 and 5 in Case No. 478555violate the Equal Protection Clause of the U.S. Constitution andSec. 16, Art. I of the Ohio Constitution."
 "V. The retaliation statute [R.C. 2921.05] and the intimidationstatutes [both R.C. 2921.04(B) and R.C. 2921.03] and are overbroad ontheir face, while R.C. 2921.05 and R.C. 2921.04(B) are also overbroad asapplied in this case and, as such, violate appellant's rights of accessto the courts, Due Process, and her right to speech and to petition forredress of grievance under the First and Fourteenth Amendments andArt. IV of the United States Constitution and Sec. II, Art. I of the OhioConstitution."
 "VI. Defendant-Appellant's convictions on Counts 4, 5, 12 and 13 inCase No. 47855 violate the First Amendment to theUnited States Constitution and Art. I, Sec. II of the Ohio Constitution because thealtered rap song *Page 22 lyrics in question do not constitute a true threat and they areprotected artistic expression."
 "VII. R.C. 2921.03(A) constitute an unconstitutional content-basedregulation of speech in violation of the First Amendment to theU.S. Constitution and Sec. 11, Art. I of the Ohio Constitution, requiring areversal of Appellant's convictions on Counts 1, 4, 5, 6, 7, 8, 9, and10 in Case No. 470184."
 "VIII. Public policy dictates that appellant should have absoluteimmunity from criminal prosecution for making false allegations withincivil lawsuits, requiring a reversal of her convictions on Counts 8, 9,10, 12 and 13 in Case No. 470184."
[1] See appendix.
[2] State v. DeLawder (June 24, 1980), 5th Dist. Case No. 2685.
[3] Id.
[4] State v. Velez (May 4, 1995), Cuyahoga App. No. 67595; State v.Morales (May 7, 1992), Cuyahoga App. No. 62075; State v. Willis (Dec. 16, 1993), Cuyahoga App. No. 64433.
[5] State v. Ball (July 17, 1997), Cuyahoga App. No. 71036.
[6] See State v. Moses (Aug. 13, 1991), 2nd Dist. No. 12293; State v. Harvey (Aug. 19, 1993), Cuyahoga App. No. 63436.
[7] State v. Bobinchuck (Sept. 13, 2000), 9th Dist. No. 19536, citing State v. Headley (1983), 6 Ohio St.3d 475, 477.
[8] State v. Johnson (May 30, 2001), 9th Dist. No. 99 CA 7449; State v. Schmidhammer (May 24, 1994), 10th Dist. No. 93APC10-1452; State v. Ulrich (Feb. 12, 1990), 5th
Dist. No. CA-7905.
[9] Tr. 934-935.
[10] State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321, citingState v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632.
[11] Id., quoting Shafer at ¶ 17-18.
[12] State v. Nero (1990), 56 Ohio St.3d 106, 108.
[13] Id.
[14] Tr. 776.
[15] State v. Mihely, 11th Dist. Nos. 2001-A-0083 and 2001-A-0084, 2002-Ohio-6939, citing State v. Cook, 83 Ohio St.3d 404,409, 1998-Ohio-291.
[16] Id.
[17] State v. Williams, 88 Ohio St.3d 513, 521, 2000-Ohio-428.
[18] Id.
[19] Akron v. Rowland, 67 Ohio St.3d 374, 381, 1993-Ohio-222, citingGrayned v. Rockford (1972), 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222.
[20] State v. Reeder (1985), 18 Ohio St.3d 25, 27.
[21] Akron, 67 Ohio St.3d at 387.
[22] Id.
[23] R.C. 2921.05.
[24] See State v. Roten, 149 Ohio App.3d 182, 2002-Ohio-4488.
[25] Dayton v. Dunnigan (1995), 103 Ohio App.3d 67, 71, citingMozzochi v. Borden (C.A.2, 1992), 959 F.2d 1174; United States v.Khorrami (C.A.7, 1990), 895 F.2d 1186; United States v. Bellrichard
(C.A.8, 1993), 994 F.2d 1318; United States v. Lee (C.A.8, 1991),935 F.2d 952.
[26] State v. Perkins, Cuyahoga App. No. 86685, 2006-Ohio-3678.
[27] R.A.V. v. St. Paul (1992), 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305.
[28] Id. at 383.
[29] Id.
[30] Id. 388.
[31] Id. 389.
[32] State v. Baker, 157 Ohio App.3d 87, 2004-Ohio-2207, quotingR.A.V. at 390. *Page 1