[Cite as *State v. Kinstle*, 2012-Ohio-5952.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  1-11-45

      v.

NICHOLAS J. KINSTLE,              O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2011 0048

Judgment Affirmed

Date of Decision:  December 17, 2012

APPEARANCES:

    *Christopher T. Travis*  for Appellant

    *Jana E. Emerick*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Nicholas Kinstle, appeals the judgment of the Court of Common Pleas of Allen County convicting him of 23 counts of intimidation and sentencing him to a total prison term of eight years. On appeal, Kinstle argues that the trial court erred by (1) failing to dismiss the indictment as violative of the United States and Ohio Constitutions; (2) entering guilty verdicts that were against the manifest weight of the evidence; and (3) abusing its discretion in sentencing him to eight years in prison. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On February 17, 2011, the Allen County Grand Jury indicted Kinstle with 23 counts of intimidation in violation of R.C. 2921.03(A), a felony of the third degree. The counts alleged intimidation of the following victims: (1) Count I – Darin Rowe; (2) Count II – Jerry Maus; (3) Count III – Dean McCombs; (4) Count IV – Tom Binkley; (5) Count V – Kevin Kesner; (6) Count VI – Branden Provonsil; (7) Count VII – Margie Miller; (8) Count VIII – Jim Link; (9) Count IX – Clyde Breitigan; (10) Count X – Jeffrey Reed; (11) Count XI – Richard Warren; (12) Count XII – Rhonda Eddy; (13) Count XIII – Becky Saine; (14) Count XIV – Al Mefferd; (15) Count XV – Fred DePalma; (16) Count XVI – Jerry Morris; (17) Count XVII – Brock Douglass; (18) Count XVIII – Sam Crish; (19) Count IXX –

Gary Hook; (20) Count XX – Tim Jackson; (21) Count XXI – Greg Sneary; (22) Count XXII – Sam Bassitt; and (23) Count XXIII – Dan Reiff.

{¶3} The indictment arose out of Kinstle's production and transmission of various notarized documents to the above-named victims demanding that they abstain from performing certain actions against him or pay him a substantial amount of money. The documents have the veneer of being official legal filings due to their format and language, but none of them were ever filed with a court. At the time of the receipt of these documents, each victim was involved in legal proceedings against Kinstle as a judge, witness, or governmental official.

{¶4} On May 25, 2011, Kinstle moved to dismiss the indictment on the basis that R.C. 2921.03 is unconstitutional. The trial court denied the motion on June 8, 2011.

{¶5} The jury trial of this matter then commenced on June 27, 2011 and continued through June 29, 2011. Testimony was adduced from all of the victims identified in the indictment, except for Sam Bassitt, Dan Reiff, and Greg Sneary, the three elected members of the Allen County Board of County Commissioners. This testimony established that three previous legal actions were relevant to this matter and that either during or after the pendency of these actions, Kinstle took various actions against the victims.

{¶6} The first relevant legal action was a 2005 tax foreclosure action against Kinstle. At that time, he owned property at 3320 Swaney Road in Harrod, Ohio.[1] Since Kinstle failed to pay the real estate taxes on the property for 10 years, Rhonda Eddy, as the Allen County Treasurer, initiated a tax foreclosure action. During the course of the action, James Link was appointed to serve as County Treasurer while Ms. Eddy became the Allen County Auditor.

{¶7} Judge Richard Warren of the Allen County Court of Common Pleas presided over the action and granted a foreclosure decree in favor of the County Treasurer. Brandon Provonsil testified that he was interested in bidding on the property during the foreclosure process and that he visited the property to inspect it. During his time there, Kinstle confronted Provonsil, explained that he was undergoing the foreclosure process, and made a "veiled threat" against Provonsil. Trial Tr., p. 141.

{¶8} The Allen County Sheriff's Department, led by Sheriff Samuel Crish, conducted two auctions of the property, but neither produced a willing bidder. As a result, the Allen County Board of County Commissioners was offered the possibility of taking the property. After considering the possibility, the Commissioners, acting upon the advice of Allen County Administrator Becky Saine, decided to take the property. Consequently, on November 12, 2009, Judge

---

[1] Kinstle also owned the adjacent property at 3340 Swaney Road, which was likewise subjected to tax foreclosure.

-4-

Warren granted an order forfeiting the property to Allen County in care of the Board of County Commissioners. Once this order was handed down, Kinstle was required to vacate and while he was removing his personal effects from the property, Sergeant Alan Mefferd with the Allen County Sheriff's Department supervised Kinstle's actions. Sergeant Mefferd testified that during the course of his time on the property, Kinstle threatened to file legal action against Sergeant Mefferd and to take action against his pension.

{¶9} Judge Warren, Treasurer Link, Auditor Eddy, Sheriff Crish, Administrator Saine, Sergeant Mefferd, and Provonsil all testified that during the pendency of the foreclosure action, they received purportedly legal documents demanding that they stop their involvement in the foreclosure process and pay large sums of money to Kinstle. Administrator Saine further testified that Commissioners Bassitt, Reiff, and Sneary also received such documents through the mail. The State introduced the documents that each of these victims received into evidence.

{¶10} Generally, the documents contain the following relevant items. First, Kinstle mailed each victim an "Affidavit of Specific Negative Averment, Opportunity to Cure, and Counterclaim" that includes fifty-three "counts," some of which refer to the actions of the above victims during the foreclosure action. Because Kinstle claimed the victims' actions were unlawful, he demanded that

they "dismiss any and all claims against [him]," pay him a certain amount of damages, or respond to the various allegations in his "specific negative averment." State's Exhibit 1, p. 18.

{¶11} Subsequently, when the victims did not comply with Kinstle's demands, he mailed most of them a "Notice of Fault and Demand for Payment."[2] In these notices, Kinstle stated that the victims' failure to respond entitled him, under the Uniform Commercial Code, to the payment of astronomical sums of money from the victims. He claimed that he was entitled to the following payments: (1) approximately $101 billion from Judge Warren, Treasurer Link, Auditor Eddy, Administrator Saine, and Sergeant Mefferd; (2) $1.1 billion from Sheriff Crish; and (3) $6 million from Commissioners Bassitt, Reiff, and Sneary. While Kinstle did send a "specific negative averment" to Provonsil stating he was subject to joint and several liability, there was no testimony to indicate that Kinstle sent him a "notice of fault and demand for payment."

{¶12} The second relevant legal action was a 2010 criminal case charging Kinstle with arson and criminal damaging. Judge Warren presided over the case, which arose from Kinstle's alleged action of setting fire to the grass on his property at 3320 Swaney Road. Allen County Sheriff Deputies Tim Jackson, Fred DePalma, Jerry Morris, Brock Douglass, and Gary Hook investigated the alleged

---

[2] Kinstle also mailed documents with other titles, such as a "Notice of Final Determination and Judgment in Nihil Dicit," that made the same allegations and demands. *See* State's Exhibit 29, p. 2.

arson. During the course of this investigation, the deputies spoke to Provonsil and several of Kinstle's neighbors, including Darin Rowe, Jerry Maus, Dean McCombs, Tim Binkley, and Kevin Kesner. Lieutenant Clyde Breitigan, the head of the Investigative Division of the Allen County Sheriff's Department, supervised the investigation.

{¶13} These officers and witnesses each received a similar set of documents from Kinstle during the pendency of the arson prosecution. Again, each victim received a "specific negative averment" that referred to his activities against Kinstle, that demanded he drop his claims against Kinstle, and that required him to pay a large sum of money or answer Kinstle's various allegations. When the victims did not comply, most victims then received a notice of fault stating that Kinstle was entitled to damages. In total, Kinstle demanded the following payments: (1) approximately $101 billion from Lieutenant Breitigan, Deputy DePalma, Deputy Morris, Brock Douglass, Deputy Jackson, and Deputy Hook; and (2) approximately $409 billion from Rowe and Kessner.[3] There is no indication that McCombs, Binkley, or Maus received a "notice of fault and demand for payment."

{¶14} The third relevant legal action was a civil action in which Kinstle was the named defendant. On September 8, 2009, Judge Jeffrey Reed found that

---

[3] Judge Warren's, Sheriff Crish's, and Provonsil's demands are discussed previously in the discussion of the foreclosure case.

Kinstle was a vexatious litigator. Consequently, Judge Reed ordered that Kinstle submit all proposed filings to him for approval and that Kinstle was only allowed to officially file his documents with the Allen County Clerk of Courts upon Judge Reed's approval. Due to Judge Reed's order, Margie Miller, a Deputy Clerk in the Clerk of Courts' Office, refused to accept several of Kinstle's filings. While this order was still in effect, both Judge Reed and Deputy Clerk Miller received "specific negative averments" that were similar to the ones discussed above. Deputy Clerk Miller also received a "notice of fault and demand for payment" stating that Kinstle was entitled to approximately $111 billion from her. There is no indication that Judge Reed received such a notice.

{¶15} During the course of the State's case, Kinstle agreed to the following stipulation: "As to all notarized documents sent to alleged victims in this case, the defendant appeared before the document, and either sent the document or caused the document to be sent to the alleged victim on each document." Trial Tr., p. 112. After the State rested its case, Kinstle moved for acquittal, but the trial court denied the motion.

{¶16} Kinstle then testified in his own defense, but his testimony was difficult to follow and mainly focused on his beliefs as they relate to the Redemptionist movement. The Redemptionists are a conspiracy-theory based movement that provides followers with purportedly legal ways to obtain certain

sums of money from individuals under the Uniform Commercial Code.[4]  After Kinstle's testimony, he rested and renewed his motion for acquittal, but the trial court again denied it.

{¶17} On June 29, 2011, the jury returned a guilty verdict on all counts alleged in the indictment.  The trial court held a sentencing hearing on July 14, 2011.  Kinstle moved for the convictions to be merged as allied offenses of similar import, but the trial court denied the motion.  After hearing arguments from counsel and a statement by Kinstle, the trial court, citing the statutory factors for sentencing and Kinstle's criminal background, which included convictions for felonious assault, resisting arrest, and criminal trespass, pronounced a prison term composed of two consecutive four year sentences, for a total term of eight years. On July 19, 2011, the trial court issued a judgment entry of sentencing that included the sentence and the following basis for it:

> the record, oral statements, any victim impact statements, the presentence report, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offenses and the offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution.  (Docket No. 169, p.1).

---

[4] Sergeant Donald Cleland, the State's expert witness, testified at length as to the nature of the Redemptionist movement.

Case No. 1-11-45

{¶18} Kinstle filed this timely appeal, presenting the following assignments of error for our review.[5]

*Assignment of Error No. I*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO DISMISS THE INDICTMENT AS A VIOLATION OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS WELL AS THE ARTICLE I SECTION I OF THE OHIO CONSTITUTION.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT/DEFENDANT BY ENTERING A GUILTY VERDICT THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. III*

**THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY SENTENCING THE DEFENDANT-APPELLANT TO TWO (2) CONSECUTIVE SENTENCES OF FOUR (4) YEARS IN PRISON TOTALING EIGHT (8) YEARS OF INCARCERATION.**

*Assignment of Error No. I*

{¶19} In his first assignment of error, Kinstle contends that the trial court erroneously overruled his motion to dismiss the indictment as violative of the

---

[5] App.R. 19(A) requires 12 point font and double line spacing, neither of which is present in Defendant's appellate brief. *See also* Loc.R. 7(A) (listing same requirements as App.R. 19(A)). Rather, Defendant's counsel used a smaller font size and reduced the line spacing. While Loc.R. 10(C) gives us authority to strike this non-conforming brief from the files, we decline to do so. Still, counsel should be advised that future briefs should conform to App.R. 19(A)'s font and spacing requirements and Loc.R. 7(B)'s length requirements. If counsel needs to file a brief that falls outside of these requirements, he is admonished to first seek leave from this court.

-10-

United States and Ohio Constitutions. Specifically, Kinstle argues (1) that R.C. 2921.03 is facially unconstitutional because it is overbroad and vague; and (2) that it is unconstitutional as applied. We disagree.

{¶20} We preliminarily note that Kinstle preserved this issue for appellate review by filing a "Motion of the Defense to Dismiss All 23 Counts for Unconstitutionality of R.C. 2921.03" on May 25, 2011.[6] Also, before addressing the merits of Kinstle's arguments, we recognize that "[a] properly enacted statute enjoys a presumption of constitutionality." *Thompson v. Bagley*, 3d Dist. No. 11-04-12, 2005-Ohio-1921, ¶ 14, citing *Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d 351, 352 (1994). "Therefore, it is incumbent upon the party challenging the statute to prove beyond a reasonable doubt that the statute violates a constitutional provision." *Id.* Additionally, "when there is more than one possible interpretation of a statute, a court will construe the statute so as to save it from constitutional infirmities." *State v. Haskell*, 3d Dist. No. 13-03-45, 2004-Ohio-3345, ¶ 21.

*Overbreadth*

{¶21} The overbreadth doctrine only applies in First Amendment contexts. *State v. Collier*, 62 Ohio St.3d 267, 272 (1991), citing *Schall v. Martin*, 467 U.S.

---

[6] At the time of the trial court filing, Kinstle did not provide notice to the Ohio Attorney General of his constitutionality challenge. But, no such notice is required in criminal prosecutions. *See Cleveland Bar Ass'n v. Picklo*, 96 Ohio St.3d 195, 2002-Ohio-395, ¶ 7 (finding that a party is only required to provide notice of a constitutionality challenge to the Ohio Attorney General where the original action was for declaratory judgment and was brought pursuant to R.C. 2727.12); *State v. Mutter*, 171 Ohio App.3d 563, 2007-Ohio-1052, ¶ 2 (8th Dist.) (rejecting argument that criminal defendant waives issue of constitutionality of statute if he fails to provide notice of challenge to the Ohio Attorney General). As a result, the lack of notice does not operate as a waiver in this matter.

253, 269, 104 S.Ct. 2403 (1984). "A statute is overbroad where it prohibits activity that would otherwise be constitutionally protected." *State v. Hart*, 110 Ohio App.3d 250, 257 (3d Dist. 1996), citing *Grayned v. Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294 (1972). When performing an overbreadth analysis, we first consider if the statute regulates speech content or speech-related conduct. *Village of Kelleys Island v. Joyce*, 146 Ohio App.3d 92, 101 (6th Dist. 2001). Where the statute regulates speech content, it must be narrowly tailored to further a compelling state interest. *State v. Snyder*, 155 Ohio App.3d 453, 2003-Ohio-6399, ¶ 18, citing *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908 (1973). However, "where conduct and not merely speech is involved, * * * the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick* at 615. Since R.C. 2921.03 is not a content-based restriction, *State v. Baumgartner*, 8th Dist. Nos. 89190, 91027, 91028, 2009-Ohio-624, ¶ 58, Kinstle has the burden of showing that the statute "reaches a significant amount of protected speech," *Snyder* at ¶ 18, citing *City of Akron v. Rowland*, 67 Ohio St.3d 374 (1993).

{¶22} *State v. Roten*, 149 Ohio App.3d 182, 2002-Ohio-4488 (12th Dist.), provides persuasive guidance to this matter. There, the defendant, like Kinstle, challenged R.C. 2921.03 as overbroad and argued that it criminalized protected speech. The court rejected the defendant's claim, stating as follows:

> The statute[] do[es] not impinge or impermissibly inhibit [the defendant's] exercise of his First Amendment rights, including, but not limited to, his right to voice displeasure with governmental conduct and policies and to request redress of grievances. * * * [As opposed to inhibiting these rights,] the statute[] proscribe[s] the use of documents not lawfully issued to intimidate * * * public servants. *Rotten* at ¶ 34.

**{¶23}** We adopt *Roten*'s reasoning and find that R.C. 2921.03 criminalizes intimidating speech-related conduct without trampling on protected speech. The statute does not preclude Kinstle from petitioning the government or publicly advocating for his positions. It merely prevents him from taking actions, such as mailing documents demanding the cessation of public duties or the payment of large sums of money, that are intended to intimidate public servants. Such a statutory prohibition is manifestly permissible since "[p]ersons cannot be permitted to threaten the health, safety, and well-being of others under the ambit of the Constitution." *State v. Brown*, 8th Dist. No. 36739 (Dec. 29, 1977).

**{¶24}** Consequently, we do not find that R.C. 2921.03 is unconstitutionally overbroad.

*Vagueness*

**{¶25}** The vagueness doctrine, which is premised on due process concerns, requires that statutes give "fair notice of offending conduct." *State v. Lewis*, 131 Ohio App.3d 229, 235 (3d Dist. 1999). A statute is void for vagueness in two scenarios. First, a statute is impermissibly vague if "men of common intelligence

-13-

must necessarily guess at its meaning and differ as to its application * * *" *State v. Glover*, 17 Ohio App.3d 256, 257 (8th Dist. 1984). Second, a statute fails for vagueness "if it authorizes or encourages arbitrary and discriminatory conduct." *State v. Sommerfield*, 3d Dist. No. 14-07-09, 2007-Ohio-6427, ¶ 12. Since "[i]mpossible standards of specificity are not required," *Haskell*, 2004-Ohio-3345, at ¶ 22, we merely assess "whether the [statutory] language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," *Lewis* at 236, quoting *Jordan v. De George*, 341 U.S. 223, 231-32, 71 S.Ct. 703 (1951).

{¶26} We previously addressed the constitutionality of R.C. 2921.03 in *Haskell*. There, we found that the statute does not fail for vagueness. *Haskell* at ¶ 23. This finding is consistent with the conclusions reached by other courts as to the facial validity of R.C. 2921.03. *See, e.g.*, *Baumgartner*, 2009-Ohio-624, at ¶ 47; *Roten*, 149 Ohio App.3d 182, 2002-Ohio-4488, at ¶ 33; *State v. Hardy*, 1st Dist. No. C-74563 (June 23, 1975). Here, Kinstle repeats the same argument and we again reject it. The language of R.C. 2921.03 has not changed since *Haskell*, so we adhere to our precedent in upholding the statute's constitutionality against a vagueness challenge. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 48 (stating that precedent may be overturned only in limited

circumstances, such as where "changes in circumstances no longer justify continued adherence to the decision").

{¶27} Consequently, we do not find that R.C. 2921.03 is void for vagueness.

*Constitutionality of R.C. 2921.03's Application*

{¶28} When a defendant asserts that a statute is unconstitutional as applied to the particular circumstances of his case, "the burden is upon [him] to present clear and convincing evidence of a presently existing set of facts which makes the [statute] unconstitutional and void when applied thereto." *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d 229, 231 (1988). In assessing the existence of such clear and convincing evidence, we first determine whether the defendant "had a constitutionally protected right to engage in the type of activity he allegedly committed." *State v. Bilder*, 99 Ohio App.3d 653, 663-64 (9th Dist. 1994). If the defendant did not engage in a protected activity, "then his argument that the statute is unconstitutional as applied must fail." *State v. Dario*, 106 Ohio App.3d 232, 240 (1st Dist. 1995).

{¶29} Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a

reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986). In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). Thus, we are required to assess whether the trial court's determination was supported by sufficient credible evidence to satisfy the requisite degree of proof. *In re McCann*, 12th Dist. No. CA2003-02-017, 2004-Ohio-283, ¶ 12.

{¶30} Kinstle suggests that the application of R.C. 2921.03 amounts merely to the criminalization of his acts during the course of litigation and his disagreements with local public servants. However, the record reflects otherwise. Indeed, Kinstle's actions were not part of any court proceedings as he filed none of the documents with the Clerk of Courts. Rather than engaging in such legitimate conduct, Kinstle drafted fraudulent documents purporting to be official court filings and sent them to the victims in an attempt to intimidate them in the course of their public duties. This conduct is patently not a protected activity and consequently, Kinstle's argument that R.C. 2921.03 is unconstitutional as applied must fail.

**{¶31}** In sum, R.C. 2921.03 is not impermissibly overbroad or vague and it is not unconstitutional as applied here.

**{¶32}** Accordingly, we overrule Kinstle's first assignment of error.

*Assignment of Error No. II*

**{¶33}** In his second assignment of error, Kinstle argues that his guilty verdicts on all 23 counts alleged in the indictment were against the manifest weight of the evidence. We disagree.

**{¶34}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id*.

**{¶35}** Kinstle was charged with 23 violations of R.C. 2921.03(A), which provides as follows:

> No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the duties of the public servant, party official, attorney, or witness.

Courts have read R.C. 2921.03 to apply to threats of non-physical harm, including financial harm. *See Roten*, 149 Ohio App.3d 182, 2002-Ohio-4488, at ¶ 21 (affirming conviction for intimidation where the defendant sent documents demanding the payment of large sums of money or the cessation of official activities); *State v. Oliver*, 9th Dist. No. 89CA004555 (May 23, 1990) (affirming conviction for intimidation where the victim suffered "emotional and mental harm"); *see also* R.C. 2921.03 Comment ("The threat of harm involved in a violation of [the statute] is not restricted to a threat of physical harm."). Under Ohio law, "knowingly" refers to the defendant being "aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶36} A review of the record discloses that the State presented overwhelming evidence to prove each violation of R.C. 2921.03(A) that was alleged in the indictment. The testimony adduced at trial established that three previous legal actions had adverse outcomes for Kinstle – the foreclosure case, the arson case, and the vexatious litigation finding by Judge Reed. It further showed that each victim was involved as either a public official or a witness in one or

more of these legal actions. And, the victims' testimony and Kinstle's own stipulation establish that during the pendency of these actions, Kinstle prepared, signed, and sent purported legal documents to each victim stating that unless they abstained from taking action against him, they would face financial harm. *See Roten* at ¶ 21. In addition to this testimony, each set of documents that was sent to the victims was admitted into evidence. This evidence was not rebutted since Kinstle's testimony mostly focused on his Redemptionist philosophy and his various grievances against the government as opposed to his intent in sending the documents.

{¶37} On appeal, Kinstle attempts to sidestep this overwhelming evidence by focusing on the failure of the State to call Commissioners Bassitt, Reiff, and Sneary to the stand. But, this failure is immaterial to the finding of guilt on Counts XXI, XXII, and XXIII. Administrator Saine testified that Kinstle's documents demanding the commissioners to stop their actions against him were received in the County Commissioners' office. Further, Kinstle stipulated to his preparation, signing, and transmission of all the documents. Finally, the caption of the "specific negative averment" identifies the commissioners as defendants in Kinstle's purported legal claim. In light of this evidence, it was not against the manifest weight of the evidence for the trial court to enter a guilty verdict on Counts XXI, XXII, and XXIII.

{¶38} Kinstle also argues that the State had to present evidence that Kinstle's actions actually intimidated the victims and prevented them from not performing their public duties or acting as witnesses against Kinstle. R.C. 2921.03(A) includes no such requirement. Rather, the language of the statute proscribes an "attempt" by the defendant to intimidate, which suggests that the victim need not actually be intimidated. *See* R.C. 2923.02 (defining attempt). Consequently, we find that the actual effect of the defendant's intimidating actions is immaterial for the purposes of finding a violation of R.C. 2921.03(A).

{¶39} In support of his contentions, Kinstle cites to *State v. Bowshier*, 167 Ohio App.3d 87, 2006-Ohio-2822 (2d Dist.). There, the defendant verbally threatened physical harm to the arresting police officer during the course of the arrest. Based on its review of the record, the court found that the defendant's intimidation conviction was against the manifest weight of the evidence because "nothing in his remarks * * * suggested, either expressly or by implication, that [the defendant] would harm [the officer] *unless* [the officer] let him go or went easy on him. An attempt to * * * intimidate * * * [the officer] would involve a quid pro quo: let me go or I will hurt you." *Id.* at ¶ 68.

{¶40} *Bowshier* is inapplicable here. Unlike the defendant there, Kinstle did offer a quid pro quo arrangement. Essentially, each of the victims had to stop what he or she was doing in the legal actions against Kinstle, or Kinstle would

make the victim pay him millions or billions of dollars. Kinstle did this fully aware of the victims' roles in the legal actions against him, which is reflected by his references to the matters in his "specific negative averments." Thus, we decline to follow *Bowshier*'s guidance in this matter.

{¶41} In sum, Kinstle's arguments are unavailing and we find that his convictions on all 23 counts alleged in the indictment were not against the manifest weight of the evidence.

{¶42} Accordingly, we overrule Kinstle's second assignment of error.

*Assignment of Error No. III*

{¶43} In his third assignment of error, Kinstle claims that the trial court abused its discretion in sentencing him to two consecutive sentences of four years for a total prison term of eight years. Specifically, he suggests that all of the counts in the indictment should have merged as allied offenses of similar import and that the trial court improperly weighed the sentencing factors contained in R.C. 2929.12. We disagree.

*Allied Offenses of Similar Import*

{¶44} R.C. 2941.25 governs multiple count indictments. It provides as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

-21-

> (B)   Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.  R.C. 2941.25.

When applying R.C. 2941.25, the courts have consistently found that "multiple violations of the same statute are not allied offenses of similar import, and a defendant may be sentenced for each violation." *State v. Brewster*, 1st Dist. Nos. C-030024, C-030025, 2004-Ohio-2993, ¶ 81; *see also State v. Geddes*, 8th Dist. No. 91042, 2008-Ohio-6489, ¶ 23; *State v. Wilson*, 5th Dist. No. 02CA030, 2004-Ohio-1692, ¶ 33; *State v. Larsen*, 89 Ohio App.3d 371, 376 (4th Dist. 1993).

{¶45} Here, Kinstle was charged with 23 separate counts of intimidation in violation of R.C. 2921.03.  For each count, Kinstle drafted and printed separate documents purporting to state a legal demand for money.  He separately addressed each set of documents to each of the 23 victims and he paid separate postage. Although Kinstle may have been motivated by the same animus in each instance,[7] this dynamic does not overcome the plain facts that each offense involved distinct actions, targeted different victims, and violated the same statute.  As such, Kinstle

---

[7] We note that contrary to Kinstle's argument, the record suggests that Kinstle may have been motivated by three separate anima – (1) a desire to intimidate officials regarding his foreclosure case; (2) a desire to intimidate witnesses and officials regarding the arson case; and (3) a desire to intimidate Judge Reed and Margie Miller over his vexatious litigator status.

was not convicted of allied offenses of similar import and the trial court properly sentenced him on each count of intimidation.

*Sentencing*

{¶46} We preliminarily note that the trial court's sentence was imposed on July 19, 2011, before the effective date of House Bill 86 ("H.B. 86"), which amended R.C. 2929.14 and R.C. 2929.19's treatment of felony sentencing. *State v. Stalnaker*, 11th Dist. No. 2011-L-151, 2012-Ohio-3028, ¶ 15. Since Kinstle's sentencing predates the enactment of H.B. 86, the new provisions of R.C. 2929.14 and R.C. 2929.19 have no applicability to this matter and the former version of the statute controls. *See, e.g.*, *State v. McGee*, 8th Dist. No. 96688, 2012-Ohio-1829, ¶ 5 (finding that the provisions of H.B. 86 do not apply where the defendant was sentenced before law's effective date). As a result, former R.C. 2929.19(B)(2)(c)'s dictate that the trial court provide reasons for its decision to impose consecutive sentences was still in effect at the time of Kinstle's sentencing.

{¶47} A reviewing court must conduct a meaningful review of the trial court's imposed sentence. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8. Such review allows the Court to "modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and

convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Id.*[8]

**{¶48}** Trial courts have plenary discretion to sentence an offender to any term of imprisonment within the statutory range without a requirement that it make any findings or give reasons for ordering the service of consecutive sentences. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. Still, R.C. 2929.11, 2929.12, 2929.13, and the unsevered portions of R.C. 2929.14 govern felony sentencing. *State v. Rockwood*, 3d Dist. No. 2-07-31, 2008-Ohio-738, ¶ 9.

**{¶49}** R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender." R.C. 2929.11(A). In advancing these purposes, sentencing courts are instructed to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id*. Meanwhile, R.C. 2929.11(B) states that felony sentences must be both "commensurate with and not demeaning to the seriousness of the offender's

---

[8] We note that the Supreme Court of Ohio's decision in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, establishes a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). While we cite to this court's precedential clear and convincing evidence standard adopted by the three dissenting justices in *Kalish*, we note that the outcome of our decision here would be the same under the plurality's two-part test.

conduct and its impact upon the victim" and consistent with sentences imposed in similar cases.

**{¶50}** Additionally, when sentencing an offender, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A). However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade*, 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶ 8.

**{¶51}** Here, the trial court indicated that it considered all of the following items when sentencing Kinstle:

> the record, oral statements, any victim impact statements, the presentence report, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offenses and the offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution. (Docket No. 169, p.1).

Further, the trial court complied with former R.C. 2929.19(B)(2)(c) and stated that the "particular facts and circumstances of this case" led it to impose consecutive sentences upon Kinstle. *Id*. at 5. Additionally, it imposed a sentence that was within the statutory range for the offenses under former R.C. 2929.14(A)(3).[9] Based on this, we reject the argument that the trial court failed to properly weigh

---

[9] Kinstle was sentenced on July 15, 2011. At that time, R.C. 2929.14(A)(3) provided the following available sentences for a third degree felony conviction: one year, two years, three years, four years, or five years. Am.Sub.H.B. No. 130, 2008 Ohio Laws 173.

the necessary statutory factors and consequently produced an inappropriate sentence.

{¶52} In sum, the counts in the indictment do not constitute allied offenses of similar import. Additionally, the trial court did not hand down an erroneous sentence.

{¶53} Accordingly, we overrule Kinstle's third assignment of error.

{¶54} Having found no error prejudicial to Kinstle herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

**_Judgment Affirmed_**

**PRESTON, J., concurs.**

**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**